BROCK, SECRETARY OF LABOR, ET AL. *v.*
ROADWAY EXPRESS, INC.

No. 85–1530.   Argued December 3, 1986—Decided April 22, 1987

MARSHALL, J., announced the judgment of the Court and delivered an opinion in which BLACKMUN, POWELL, and O'CONNOR, JJ., joined. BRENNAN, J., filed an opinion concurring in part and dissenting in part, *post*, p. 269. WHITE, J., filed an opinion concurring in part and dissenting in part, in which REHNQUIST, C. J., and SCALIA, J., joined, *post*, p. 271. STEVENS, J., filed an opinion dissenting in part, *post*, p. 273.

*Andrew J. Pincus* argued the cause for appellants. With him on the briefs were *Solicitor General Fried, Deputy Solicitor General Cohen, George R. Salem, Allen H. Feldman, Mary-Helen Mautner, Steven J. Mandel,* and *Jeanne K. Beck.*

*Michael C. Towers* argued the cause for appellee. With him on the brief was *John B. Gamble, Jr.**

JUSTICE MARSHALL announced the judgment of the Court and delivered an opinion in which JUSTICE BLACKMUN, JUSTICE POWELL, and JUSTICE O'CONNOR join.

Section 405 of the Surface Transportation Assistance Act of 1982, 96 Stat. 2157, 49 U. S. C. App. § 2305, protects employees in the commercial motor transportation industry from being discharged in retaliation for refusing to operate a motor vehicle that does not comply with applicable state and federal safety regulations or for filing complaints alleging such noncompliance. The statute provides for an initial investigation of an employee's discharge by the Secretary of Labor and, upon a finding of reasonable cause to believe that the employee was discharged in violation of the Act, requires the Secretary to issue an order directing the employer to reinstate the employee. The employer may then request an evidentiary hearing and a final decision from the Secretary, but this request does not operate to stay the preliminary order of reinstatement. The issue presented in this appeal is whether the failure of § 405 to provide for an evidentiary hearing before temporary reinstatement deprives the employer of procedural due process under the Fifth Amendment.

## I

Appellee Roadway Express, Inc. (Roadway), is a large interstate trucking company engaged primarily in cargo transportation; it is subject to the requirements of § 405. See 49 U. S. C. App. § 2301(3). On November 22, 1983, Road-

*Paul Alan Levy, Alan B. Morrison,* and *Arthur L. Fox II* filed a brief for Teamsters for a Democratic Union as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Trucking Associations, Inc., et al. by *William S. Busker* and *Kenneth E. Siegel;* and for Central Ohio Coal Co. et al. by *Alvin J. McKenna* and *D. Michael Miller.*

way discharged one of its drivers, Jerry Hufstetler, alleging that he had disabled several lights on his assigned truck in order to obtain extra pay while waiting for repairs. Hufstetler filed a grievance, contending that he had not been discharged for an "act of dishonesty" as defined in the governing collective-bargaining agreement, but rather had been discharged in retaliation for having previously complained of safety violations. The grievance was submitted to arbitration, which ultimately resulted in a ruling on January 30, 1984, that Hufstetler had been properly discharged.

On February 7, 1984, Hufstetler filed a complaint with the Department of Labor alleging that his discharge had violated § 405. The Occupational Safety and Health Administration notified Roadway of the complaint and began an investigation. An OSHA field investigator interviewed Hufstetler and other Roadway employees and obtained statements substantiating Hufstetler's retaliatory discharge claim. Roadway was afforded an opportunity to meet with the investigator and submit a written statement detailing the basis for Hufstetler's discharge, but it was not provided with the names of the other witnesses or the substance of their statements. Roadway explained the discharge by reiterating that, as found by the arbitration board, Hufstetler had acted dishonestly in fabricating an equipment breakdown.

Following review of the evidence obtained by the field investigator, the Department of Labor Regional Administrator on January 21, 1985, issued a preliminary decision ordering Hufstetler's immediate reinstatement with backpay. Without detailing the evidence relied upon for this decision, the order stated that the Secretary of Labor had found reasonable cause to believe Hufstetler had been discharged in violation of § 405 for having previously complained about the safety of Roadway's trucks. The order characterized Roadway's asserted basis for the discharge as "conjecture." App. to Juris. Statement 21a.

Roadway then filed the present action in Federal District Court, seeking an injunction against enforcement of the Secretary's order and a declaratory judgment that § 405 was unconstitutional to the extent it empowered the Secretary to order temporary reinstatement without first conducting an evidentiary hearing. The District Court granted Roadway's motion for a preliminary injunction, *Roadway Express, Inc.* v. *Donovan*, 603 F. Supp. 249, and subsequently granted its motion for summary judgment, 624 F. Supp. 197 (ND Ga. 1985).

Roadway also filed objections to the reinstatement order with the Secretary and requested an evidentiary hearing and final decision. This hearing took place in March 1985, before an Administrative Law Judge, and the Secretary issued a decision on August 21, 1986, again ordering reinstatement with backpay. Roadway's appeal from this administrative decision is currently pending in the United States Court of Appeals for the Eleventh Circuit, No. 86–8771.

The Secretary brought this direct appeal from the District Court's order granting Roadway summary judgment. 28 U. S. C. § 1252. We noted probable jurisdiction, 476 U. S. 1113 (1986), and now affirm in part, agreeing with the District Court that the Secretary's procedures unconstitutionally deprived Roadway of procedural due process by failing to provide Roadway with the substance of the evidence supporting Hufstetler's complaint, and reverse in part, rejecting the District Court's conclusion that § 405 is constitutionally infirm because it empowers the Secretary to order preliminary reinstatement without first conducting an evidentiary hearing and affording Roadway an opportunity to cross-examine witnesses.

## II

As a threshold matter, we conclude that the Secretary's issuance of the final order of reinstatement following the evidentiary hearing does not render this appeal moot. We acknowledge that Roadway's obligation to reinstate Huf-

stetler and pay back wages now flows from the Secretary's final order and not the preliminary order to which the District Court's injunction and order of summary judgment were directed. Nonetheless, the controversy between Roadway and the Secretary as to the constitutional adequacy of the Secretary's procedures prior to the issuance of the preliminary reinstatement order falls within the "capable of repetition, yet evading review" exception to the actual case-and-controversy requirement. *Southern Pacific Terminal Co.* v. *ICC*, 219 U. S. 498, 515 (1911). The duration of the preliminary order was too short for Roadway's challenge to be fully litigated; yet it can reasonably be expected that Roadway, one of this Nation's largest interstate trucking companies, will be subjected to similar preliminary orders in the future. See *Weinstein* v. *Bradford*, 423 U. S. 147, 149 (1975). Accordingly, we proceed to the merits of this appeal.

## III

Section 405 was enacted in 1983 to encourage employee reporting of noncompliance with safety regulations governing commercial motor vehicles. Congress recognized that employees in the transportation industry are often best able to detect safety violations and yet, because they may be threatened with discharge for cooperating with enforcement agencies, they need express protection against retaliation for reporting these violations. See, *e. g.*, 128 Cong. Rec. 32698 (1982) (remarks of Sen. Percy); *id.*, at 32509–32510 (remarks of Sen. Danforth). Section 405 protects employee "whistleblowers" by forbidding discharge, discipline, or other forms of discrimination by the employer in response to an employee's complaining about or refusing to operate motor vehicles that do not meet the applicable safety standards. 49 U. S. C. App. §§ 2305(a), (b).

Congress also recognized that the employee's protection against having to choose between operating an unsafe vehicle and losing his job would lack practical effectiveness if the

employee could not be reinstated pending complete review. The longer a discharged employee remains unemployed, the more devastating are the consequences to his personal financial condition and prospects for reemployment. Ensuring the eventual recovery of backpay may not alone provide sufficient protection to encourage reports of safety violations. Accordingly, § 405 incorporates additional protections, authorizing temporary reinstatement based on a preliminary finding of reasonable cause to believe that the employee has suffered a retaliatory discharge. The statute reflects a careful balancing of the relative interests of the Government, employee, and employer. It evidences a legislative determination that the preliminary investigation and finding of reasonable cause by the Secretary, if followed "expeditiously" by a hearing on the record at the employer's request, provide effective protection to the employee and ensure fair consideration of the employer's interest in making unimpaired hiring decisions. 49 U. S. C. App. § 2305(c)(2)(A).

The statute does not specify procedures for employer participation in the Secretary's investigation, other than to require that the employer be notified of the employee's complaint. 49 U. S. C. App. § 2305(c)(1). The Secretary has assigned the investigative responsibilities to OSHA field investigators, 48 Fed. Reg. 35736 (1983) (Secretary's Order 9–83), who followed standard OSHA procedures until the Secretary issued formal implementing rules for § 405, effective December 22, 1986. See 51 Fed. Reg. 42091 (1986) (proposed 29 CFR pt. 1978). The standard procedures which governed the investigation of Hufstetler's complaint against Roadway in this case required that Roadway be notified "of the complaint and of the substance of the allegation" and also that the field investigator consult with Roadway to obtain its explanation for the discharge before the Secretary made any findings and issued a preliminary reinstatement order. OSHA Instruction CPL 2.45A CH–4, p. X–5 (Mar. 8, 1984); OSHA Instruction DIS.6, pp. 4, 8, 9 (Dec. 12, 1983); OSHA

Investigative Manual, pp. V–1, VI–3, VI–4 (1979). The current implementing rules provide for similar participation by the employer, including an opportunity to meet with the investigator and submit statements from witnesses supporting the employer's position. 51 Fed. Reg., at 42093 (proposed 29 CFR § 1978.103).[1]

Neither set of procedures, however, requires that before ordering preliminary reinstatement the Secretary must hold an evidentiary hearing and allow the employer to cross-examine the witnesses from whom the investigator has obtained statements supporting the employee's complaint. Nor do the procedures require the Secretary to divulge the names of these individuals or the substance of their statements before the preliminary reinstatement order takes effect. Roadway claims that the lack of an evidentiary hearing and the confidentiality of the investigator's evidence operate to deny employers procedural due process under the Fifth Amendment.

The property right of which Roadway asserts it has been deprived without due process derives from the collective-bargaining agreement between Roadway and its employees' union. It is the right to discharge an employee for cause. Acknowledging that the first step is to identify a property or liberty interest entitled to due process protections, *Cleveland Board of Education* v. *Loudermill,* 470 U. S. 532, 538–539 (1985); *Board of Regents* v. *Roth,* 408 U. S. 564, 576–578 (1972), the Secretary concedes that the contractual right to

---

[1] The new rules provide:

"Within twenty days of his or her receipt of the complaint the [employer] may submit to OSHA a written statement and any affidavits or documents explaining or defending his or her position. Within the same twenty days the [employer] may request a meeting with OSHA to present his or her position. The meeting will be held before the issuance of any findings or preliminary order. At the meeting the named person may be accompanied by counsel and by any persons with information relating to the complaint, who may make statements concerning the case." 51 Fed. Reg. 42093 (1986) (proposed 29 CFR § 1978.103).

discharge an employee for cause constitutes a property interest protected by the Fifth Amendment.[2]   Brief for Appellants 16.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey* v. *Brewer*, 408 U. S. 471, 481 (1972).   Though the required procedures may vary according to the interests at stake in a particular context, *Boddie* v. *Connecticut*, 401 U. S. 371, 378 (1971), "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews* v. *Eldridge*, 424 U. S. 319, 333 (1976), quoting *Armstrong* v. *Manzo*, 380 U. S. 545, 552 (1965); see also *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306, 313 (1950).   Depending on the circumstances, and the interests at stake, a fairly extensive evidentiary hearing may be constitutionally required before a legitimate claim of entitlement may be terminated.   See *Goldberg* v. *Kelly*, 397 U. S. 254, 266–271 (1970) (suspension of welfare benefits invalid if not preceded by an evidentiary hearing giving the recipient an opportunity to confront witnesses and present evidence and argument orally).   In other instances, however, the Court has upheld procedures affording less than a full evidentiary hearing if "'some kind of a hearing'" ensuring an effective "initial check against mistaken decisions" is

---

[2] Though we accept the Secretary's concession, we do not accept Roadway's separate assertion that it has a property interest in being able to rely exclusively on the contractually mandated arbitration procedures to determine the propriety of a discharge.   The essence of this assertion is that, for purposes of enforcing § 405, the Secretary of Labor and the courts should give collateral-estoppel or res judicata effect to decisions reached by arbitration boards.   Under the Secretary's implementing rules, issues of collateral estoppel and res judicata may be raised before the Secretary as part of a § 405 proceeding, and the Secretary's decision may be reviewed by the appropriate Court of Appeals.   See 51 Fed. Reg., at 42095 (proposed 29 CFR § 1978.112) (interpreting § 405 to allow concurrent jurisdiction over employee complaints before arbitration boards under collective-bargaining agreements and before the Secretary under the statute).

provided before the deprivation occurs, and a prompt opportunity for complete administrative and judicial review is available. *Loudermill, supra,* at 542, 545, quoting *Roth, supra,* at 569–570; see also *Mathews, supra,* at 349.

Determining the adequacy of predeprivation procedures requires consideration of the Government's interest in imposing the temporary deprivation, the private interests of those affected by the deprivation, the risk of erroneous deprivations through the challenged procedures, and the probable value of additional or substitute procedural safeguards. *Mathews, supra,* at 335. In the present case, the District Court assessed these factors and determined that § 405 was "unconstitutional and void to the extent that it empowers [the Secretary] to order reinstatement of discharged employees prior to conducting an evidentiary hearing which comports with the minimum requirements of due process." 624 F. Supp., at 203. The court concluded that the employer must be given, "at a minimum, an opportunity to present his side and a chance to confront and cross examine witnesses." *Ibid.* Our consideration of the relevant factors leads us to a different conclusion.

We begin by accepting as substantial the Government's interests in promoting highway safety and protecting employees from retaliatory discharge. Roadway does not question the legislative determination that noncompliance with applicable state and federal safety regulations in the transportation industry is sufficiently widespread to warrant enactment of specific protective legislation encouraging employees to report violations. "Random inspections by Federal and State law enforcement officials in various parts of the country [had] uniformly found widespread violation of safety regulations," and § 405 was designed to assist in combating the "increasing number of deaths, injuries, and property damage due to commercial motor vehicle accidents." 128 Cong. Rec. 32509, 32510 (1982) (remarks of Sen. Danforth and summary of proposed statute).

We also agree with the District Court that Roadway's interest in controlling the makeup of its work force is substantial. 624 F. Supp., at 202. In assessing the competing interests, however, the District Court failed to consider another private interest affected by the Secretary's decision: Hufstetler's interest in not being discharged for having complained about the allegedly unsafe condition of Roadway's trucks. This Court has previously acknowledged the "severity of depriving a person of the means of livelihood." *Loudermill*, 470 U. S., at 543. "While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job." *Ibid.* In light of the injurious effect a retaliatory discharge can have on an employee's financial status and prospects for alternative interim employment, the employee's substantial interest in retaining his job must be considered along with the employer's interest in determining the constitutional adequacy of the § 405 procedures. The statute reflects a careful balancing of "the strong Congressional policy that persons reporting health and safety violations should not suffer because of this action" and the need "to assure that employers are provided protection from unjustified refusal by their employees to perform legitimate assigned tasks." 128 Cong. Rec. 32510 (1982) (summary of statute).

Reviewing this legislative balancing of interests, we conclude that the employer is sufficiently protected by procedures that do not include an evidentiary hearing before the discharged employee is temporarily reinstated. So long as the prereinstatement procedures establish a reliable "initial check against mistaken decisions," *Loudermill, supra,* at 545, and complete and expeditious review is available, then the preliminary reinstatement provision of § 405 fairly balances the competing interests of the Government, the employer, and the employee, and a prior evidentiary hearing is not otherwise constitutionally required.

We thus confront the crucial question whether the Secretary's procedures implementing § 405 reliably protect against the risk of erroneous deprivation, even if only temporary, of an employer's right to discharge an employee. We conclude that minimum due process for the employer in this context requires notice of the employee's allegations, notice of the substance of the relevant supporting evidence, an opportunity to submit a written response, and an opportunity to meet with the investigator and present statements from rebuttal witnesses. The presentation of the employer's witnesses need not be formal, and cross-examination of the employee's witnesses need not be afforded at this stage of the proceedings.

In *Loudermill*, the Court considered the temporary deprivation of a state government employee's right not to be discharged without cause, indicating that the employee was entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before the temporary discharge took effect, though a full evidentiary hearing including the right to confront and cross-examine adverse witnesses could be delayed for a reasonable period. 470 U. S., at 546. Similarly, in *Arnett* v. *Kennedy*, 416 U. S. 134 (1974), the Court upheld the procedures upon which a Federal Government employee had been temporarily discharged, where those procedures did not provide for a full evidentiary hearing until after the discharge became effective but did afford the employee "advance written notice of the reasons for his proposed discharge and the materials on which the notice [was] based," as well as "the right to respond to the charges both orally and in writing, including the submission of affidavits." *Id.*, at 170 (opinion of POWELL, J.). These cases reflect that the constitutional requirement of a meaningful opportunity to respond before a temporary deprivation may take effect entails, at a minimum, the right to be informed not only of the nature of the charges but also of

the substance of the relevant supporting evidence. If the employer is not provided this information, the procedures implementing § 405 contain an unacceptable risk of erroneous decisions.

The Secretary represents that it is the practice of Department of Labor investigators to inform employers of the substance of the evidence supporting employees' allegations. Brief for Appellants 40, n. 19. Though we do not find this practice expressed in the field manuals for OSHA investigators or in the Secretary's new regulations, we accept the representation as embodying an established, official procedure for implementing § 405 of which employers are specifically made aware. It is undisputed, however, that in this case the procedure was not followed, for Roadway requested and was denied access to the information upon which the Secretary based the order for Hufstetler's preliminary reinstatement. 624 F. Supp., at 200. Given this circumstance, the District Court correctly held that Roadway had been denied a due process protection to which it was entitled, and we affirm the order of summary judgment in that respect.

Notice of an employee's complaint of retaliatory discharge and of the relevant supporting evidence would be of little use if an avenue were not available through which the employer could effectively articulate its response. On this score, assuming the employer is informed of the substance of the evidence supporting the employee's complaint, the Secretary's current procedures allowing the employer to submit a written response, including affidavits and supporting documents, and to meet with the investigator to respond verbally to the employee's charges and present statements from the employer's witnesses, see n. 1, *supra;* 51 Fed. Reg., at 42093 (proposed 29 CFR § 1978.103), satisfy the due process requirements for reliability. Except for the Secretary's failure to inform Roadway of the evidence supporting Hufstetler's complaint, similar procedures were followed in this case.

Roadway contends that, absent an opportunity for the employer to confront and cross-examine the witnesses whose statements support the employee's complaint, the Secretary's preliminary procedures will produce unreliable decisions. We conclude, however, that as a general rule the employer's interest is adequately protected without the right of confrontation and cross-examination, again so long as the employer is otherwise provided an opportunity to respond "at a meaningful time and in a meaningful manner." *Armstrong*, 380 U. S., at 552. Providing the employer the relevant supporting evidence and a chance to meet informally with the investigator, to submit statements from witnesses and to argue its position orally, satisfies the constitutional requirement of due process for the temporary deprivation under § 405. Each of these procedures contributes significantly to the reliability of the Secretary's preliminary decision without extending inordinately the period in which the employee must suffer unemployment. To allow the employer and employee an opportunity to test the credibility of opposing witnesses during the investigation would not increase the reliability of the preliminary decision sufficiently to justify the additional delay. Moreover, the primary function of the investigator is not to make credibility determinations, but rather to determine simply whether reasonable cause exists to believe that the employee has been discharged for engaging in protected conduct. Ensuring the employer a meaningful opportunity to respond to the employee's complaint and supporting evidence maintains the principal focus on the employee's conduct and the employer's reason for his discharge. Final assessments of the credibility of supporting witnesses are appropriately reserved for the administrative law judge, before whom an opportunity for complete cross-examination of opposing witnesses is provided.

Roadway finally argues that requiring an evidentiary hearing as part of the process leading to preliminary reinstate-

ment would not impose a significant additional burden on the Secretary since a subsequent evidentiary hearing must be "expeditiously conducted" in any event. 49 U. S. C. App. § 2305(c)(2)(A). Again, however, Roadway's suggested approach would undoubtedly delay issuance of the Secretary's order of reinstatement.[3] In addition to the extra time required for the hearing itself, this approach would provide an incentive for employers to engage in dilatory tactics. Added delay at this stage of the Secretary's proceedings would further undermine the ability of employees to obtain a means of livelihood, and unfairly tip the statute's balance of interests against them.

This is not to say, however, that the employer's interest in an expeditious resolution of the employee's complaint can never provide a basis for a due process violation. At some point, delay in holding postreinstatement evidentiary hearings may become a constitutional violation. See *Loudermill*, 470 U. S., at 547; *Barry* v. *Barchi*, 443 U. S. 55, 66 (1979); *Mathews*, 424 U. S., at 341–342. The current implementing rules require the evidentiary hearing to take place within 30 days after an employer files objections to a preliminary reinstatement order, unless the employer and employee otherwise agree or good cause is shown. 51 Fed. Reg., at 42093 (proposed 29 CFR 1978.106(b)). The administrative law judge is allowed an additional 30 days to issue a decision, again unless the parties otherwise agree or good cause is shown.

---

[3] We do not agree with JUSTICE STEVENS, *post*, at 274–275, that the length of a preliminary investigation deemed necessary by the Secretary in a complex case should become the rationale for extending it even further by making a full evidentiary hearing a constitutional requirement. Additional delay can only increase the financial hardship to the employee. The record here does not indicate what factors were responsible for the extended investigation. It was certainly not against Roadway's interest to delay the investigation. But even if the delay resulted solely from bureaucratic lethargy, it neither defines nor diminishes the importance of Hufstetler's interest in reinstatement.

51 Fed. Reg., at 42094 (proposed 29 CFR § 1978.109(a)).   The Secretary then must issue a final order within 120 days.   51 Fed. Reg., at 42094 (proposed 29 CFR § 1978.109(c)).   The Secretary interprets these time requirements not as mandatory but rather as "directory in nature."   51 Fed. Reg., at 42095 (proposed 29 CFR § 1978.114).   Once the Secretary orders preliminary reinstatement, an incentive for delay lies naturally with the employee, and intentional foot dragging may entitle the employer to challenge the delay.   In this case, however, due to the District Court's injunction, the Secretary's preliminary reinstatement order never became effective.   Moreover, the record does not reflect why it took the Secretary 19 months to issue a final decision ordering reinstatement.   The litigation before the District Court may have been a distraction, Roadway's natural incentive to delay may have played a part, and Labor Department personnel may have acted with extreme inefficiency.   Because the procedural posture of this case has not allowed factual development on the issue, we decline to decide whether the delay Roadway has encountered, or the delays authorized in the Secretary's new regulations, are so excessive as to constitute a violation of due process.

## IV

The District Court correctly held that the Secretary's preliminary reinstatement order was unconstitutionally imposed in this case because Roadway was not informed of the relevant evidence supporting Hufstetler's complaint and therefore was deprived of an opportunity to prepare a meaningful response.   The court erred, however, in holding § 405 unconstitutional to the extent as interpreted by the Secretary it does not provide the employer an evidentiary hearing, complete with the right to confront and cross-examine witnesses, before the employee's temporary reinstatement can be ordered.   Accordingly, the District Court's order of summary judgment is

*Affirmed in part and reversed in part.*

JUSTICE BRENNAN, concurring in part and dissenting in part.

I agree with the plurality's conclusion that the Secretary's procedures unconstitutionally deprived Roadway of procedural due process by failing to inform Roadway of the substance of the evidence supporting Hufstetler's complaint. I disagree, however, with the plurality's conclusion that the Secretary may order an indefinite preliminary reinstatement of discharged drivers without first affording employers an opportunity to present contrary testimony and evidence and to cross-examine witnesses.

Here Roadway contested the facts underlying the Secretary's preliminary determination that there was reasonable cause to believe that the discharge of Hufstetler was retaliatory. When there are *factual* disputes that pertain to the validity of a deprivation, due process "require[s] more than a simple opportunity to argue or deny." *Cleveland Board of Education* v. *Loudermill*, 470 U. S. 532, 552 (1985) (BRENNAN, J., concurring in part and dissenting in part). Predeprivation procedures must provide "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges . . . are *true* and support the proposed action." *Id.*, at 545–546 (emphasis added). When, as here, the disputed question central to the deprivation is factual, and when, as here, there is no assurance that adequate final process will be prompt, predeprivation procedures are unreliable if they do not give the employer "an opportunity to test the strength of the evidence 'by confronting and cross-examining adverse witnesses and by presenting witnesses on [its] own behalf.'" *Id.*, at 548 (MARSHALL, J., concurring in part and concurring in judgment) (quoting *Arnett* v. *Kennedy*, 416 U. S. 134, 214 (1974) (MARSHALL, J., dissenting)). Thus, employers such as Roadway are entitled to a fair opportunity to confront the

accuser, to cross-examine witnesses, and to produce contrary records and testimony.*

The adequacy of predeprivation procedures is in significant part a function of the speed with which a postdeprivation or final determination is made. Previously the Court has recognized that "[t]he duration of any potentially wrongful deprivation of a property interest is an important factor in assessing the impact of official action on the private interest involved." *Mackey* v. *Montrym*, 443 U. S. 1, 12 (1979). See also *Loudermill*, *supra*, at 547 ("At some point, a delay in the post-termination hearing would become a constitutional violation"). Were there any guarantee that the final hearing would occur promptly—within a few weeks, for example— the procedure endorsed by the Court might suffice. No such guarantee exists.

The statute itself requires that the final hearing be "expeditiously conducted." 49 U. S. C. App. § 2305(c)(2)(A). But, as the plurality states, the Secretary's implementing rules expressly allow a total delay of six months between the order of preliminary reinstatement, the holding of the postdeprivation hearing, the issuance of the administrative law judge's opinion, and the final order of the Secretary. *Ante*, at 267– 268. Moreover, the Secretary interprets the overly generous time requirements in the implementing rules as merely

---

*The employer's property interest—its right to discharge an employee for cause under the collective-bargaining agreement—is less substantial than other interests which may not be impaired without confrontation and cross-examination. See, *e. g.*, *Goldberg* v. *Kelly*, 397 U. S. 254, 266–271 (1970). Moreover, the property interest is less weighty here because it must be balanced against the Government's interest in highway safety and the wrongfully discharged employee's interest in retaining his or her job. The less substantial weight of the property interest, however, is not dispositive. When the validity of *any* deprivation depends on the resolution of a factual dispute, the initial check against mistaken decisions is inadequate unless either a fair opportunity for confrontation, cross-examination, and presentation of testimony is provided or an evidentiary hearing and final disposition follow on the heels of the preliminary determination.

"directory in nature," rather than mandatory. One of these regulatory time requirements—that "[u]pon the conclusion of [the final] hearing, the Secretary of Labor shall issue a final order within one hundred and twenty days"—is found not only in the Secretary's implementing rules, but also in the statute. 49 U. S. C. App. § 2305(c)(2)(A). Leaving aside the dubious validity of this cavalier treatment of a statutory imperative, the fact that the Secretary regards the time periods governing final relief as directory reveals that the final decision will not be reached within six months, let alone promptly. The combination of uncertainty and delay inherent in the Secretary's regulatory scheme eliminates any possibility that it might compensate for the inadequacy of the predeprivation hearing.

Because I believe that the District Court correctly held that the Secretary may not order preliminary reinstatement without first providing the employer with a chance to confront its accuser, to cross-examine witnesses, and to present its own testimony, I would affirm its judgment. I therefore dissent in part from the plurality opinion and the judgment of the Court.

JUSTICE WHITE, with whom THE CHIEF JUSTICE and JUSTICE SCALIA join, concurring in part and dissenting in part.

I agree that the District Court erred in holding that a full trial-type hearing was necessary prior to termination, so long as the employer was afforded an adequate posttermination hearing at a meaningful time. I also agree that respondent Roadway Express, Inc., was entitled to notice of Jerry Hufstetler's charges and an opportunity to respond to them prior to being ordered to temporarily reinstate him. But, with all respect, I disagree with the plurality's conclusion that Roadway was denied due process when it did not have access to the information on which the reinstatement order was based, including the names of witnesses.

The procedures the Due Process Clause requires prior to administrative action such as was taken in this case can vary,

depending upon the precise nature of the government function involved, the importance of the private interests that have been affected by governmental action, and the nature of subsequent proceedings. *Cleveland Board of Education* v. *Loudermill*, 470 U. S. 532, 545 (1985); *Cafeteria Workers* v. *McElroy*, 367 U. S. 886, 895 (1961). Thus, what may have been required in *Loudermill* or *Arnett* v. *Kennedy*, 416 U. S. 134, 170 (1974), is no sure guide to resolving the present case. The plurality ably articulates the Government's purpose underlying § 405: "Section 405 protects employee 'whistle-blowers' by forbidding discharge, discipline, or other forms of discrimination by the employer in response to an employee's complaining about or refusing to operate motor vehicles that do not meet the applicable safety standards." *Ante,* at 258. And the employee himself has substantial interest in not being terminated and in being paid his wages or the remuneration. On the other side of the scale is Roadway's interest in not having an unsatisfactory employee on the job pending a full evidentiary hearing. That interest, however, is protected by requiring a reasonable cause finding by the Secretary prior to the issuance of his order, by notice of the charges, and by the opportunity for Roadway to present its side of the case. That is the balance struck by the statute, and the Secretary's regulations and due process require no more, even though in most cases the Secretary may voluntarily reveal the evidence supporting the charge. Given the purpose of § 405, I would not ignore the strong interest the Government may have in particular cases in not turning over the supporting information, including the names of the employees who spoke to the Government and who corroborated Hufstetler's claims, prior to conducting the full administrative hearing.

Because I believe that withholding the witnesses' names and statements prior to ordering temporary reinstatement did not violate respondent's due process rights, I find myself in partial dissent from the plurality's opinion and judgment.

JUSTICE STEVENS, dissenting in part.

Section 405 of the Surface Transportation Assistance Act of 1982, 49 U. S. C. App. § 2305, is an extraordinary piece of legislation. In most organized industries employees are adequately protected against wrongful discharge by the arbitration machinery that has been established pursuant to collective-bargaining agreements, and by their unions. In the motor carrier industry, however, § 405 provides every driver with a special statutory right to reinstatement if an agent of the Secretary of Labor determines that there is "reasonable cause to believe" that the driver was discharged because he reported a safety violation. It was on the basis of this statute that the Department of Labor conducted an 11-month *ex parte* investigation which culminated in its ordering Roadway Express to reinstate Jerry Hufstetler to his job as a driver. The Department heard testimony of witnesses in the course of the investigation, but Roadway was never given a record of the evidence or a list of the witnesses, much less afforded the opportunity to confront the witnesses. Yet, based on a "preliminary" decision reached through these procedures, Roadway was required to continue employing Hufstetler, who it claims is a dishonest employee, for an indeterminate period pending an eventual hearing at which the truth might eventually be established.

The Government's compelling interest in highway safety adequately justifies the creation of a special statutory right to protect truck drivers who share the public's vital interest in strict enforcement of motor vehicle safety regulations. That interest, however, does not justify the use of patently unfair procedures to implement that right. Specifically, it does not justify the entry of reinstatement orders on the basis of secret evidence that is neither disclosed to the employer nor tested in an adversary proceeding before the order becomes effective.

The plurality attempts to legitimate this departure from the traditions of due process by asserting that it is essential

for the Department of Labor to be able to act swiftly; any delays in reinstatement, it is feared, will deter drivers from reporting safety violations. There are, of course, situations in which the threat of irreparable injury justifies the entry of temporary orders that are not preceded by an adequate hearing.[1] Similarly, government's special interest in the efficient management of programs that it administers sometimes makes it appropriate to briefly postpone an adjudication of the rights of an employee, a program beneficiary, or a licensee, until after an initial determination has been made.[2] In this case, however, it is ludicrous for the Secretary to rely on an "emergency" or "necessity" justification for a reinstatement order entered 14 months after the discharge. It is clear

---

[1] See *Ewing* v. *Mytinger & Casselberry, Inc.*, 339 U. S. 594 (1950); *North American Cold Storage Co.* v. *Chicago*, 211 U. S. 306 (1908). Federal Rule of Civil Procedure 65(b) provides a sense of the narrow circumstances in which such action may be taken. That Rule allows a judge to grant a temporary restraining order (TRO) only "if it clearly appears" that "immediate and irreparable injury, loss, or damage will result" otherwise. The TRO expires after 10 days or less, and an adversarial hearing must be scheduled "at the earliest possible time," taking precedence over "all matters."

[2] See, *e. g., Cleveland Board of Education* v. *Loudermill*, 470 U. S. 532 (1985); *Mathews* v. *Eldridge*, 424 U. S. 319 (1976); *Barry* v. *Barchi*, 443 U. S. 55 (1979); *Dixon* v. *Love*, 431 U. S. 105 (1977). Cases dealing with the pretermination procedures that must be made available to those deprived of employment, benefits, or other forms of "new property," are not necessarily controlling on the level of procedures required when the government exercises its classic police power to interfere with transactions and matters involving private parties. We have explained that "the precise nature of the governmental function involved" is a relevant factor in due process analysis, *Cafeteria Workers* v. *McElroy*, 367 U. S. 886, 895 (1961), and have recognized the unique burdens that face the Government in its roles as employer and distributor of benefits. See *Arnett* v. *Kennedy*, 416 U. S. 134, 168 (1974) (opinion of POWELL, J.). In expanding the type of property interests protected under the Due Process Clause, we must be cautious to avoid diluting the procedural protections the Clause has traditionally guaranteed when the Government takes action such as that under § 405.

that the Department of Labor does not attempt to take immediate action to reinstate fired employees. Rather, "preliminary" investigations often drag on for months and months. In the case of Jerry Hufstetler, for example, there was an 11-month delay between the filing of his complaint and the Department's decision that he deserved temporary reinstatement pending an eventual determination of why Roadway Express discharged him.[3] Obviously, ample time is available for full and fair predeprivation process under these circumstances,[4] and the plurality's reliance on the Secretary's vague assertion that providing a more meaningful hearing would cause delay is misguided.[5]

In conducting its balancing, the plurality concludes that allowing the parties to test the witnesses through cross-

---

[3] The Secretary contends that this delay was unusual. According to the Secretary's statistics, § 405 investigations are now quicker—the average length of recent investigations has been 102 days. Moreover, recently promulgated regulations provide that a decision is to be reached within 60 days of the filing of the complaint. See 51 Fed. Reg. 42093 (1986) (proposed 29 CFR § 1978.104). No matter which of these figures is considered, these types of delay fly in the face of the Secretary's claim that immediate action is necessary to mitigate the impact of a wrongful termination.

[4] The Speedy Trial Act, for example, demands that a criminal defendant be tried within 70 days of his indictment, or his first appearance before a judge or magistrate. See 18 U. S. C. § 3161 et seq. (1982 ed. and Supp. III). Is it possible that expedited trials are feasible in the criminal context, but affording carriers a predeprivation confrontational hearing is impossible?

[5] The plurality is concerned about the financial implications that any delay may have on the discharged driver. Ante, at 267. While I share in this concern, the answer is for the Department of Labor to avoid these delays by devoting sufficient resources to its § 405 program. The carriers should not be forced to bear the burden of the agency's lethargy. It is also worth pointing out that short delays will not necessarily wreak havoc with a driver's ability to make do. In this case, for example, Hufstetler's annual earnings were in the $50,000 range, App. to Juris. Statement 37a, and a driver is, in any event, guaranteed full backpay with interest if the Department actually finds that he or she was discharged in violation of § 405.

examination would not "increase the reliability of the preliminary decision sufficiently to justify the additional delay." *Ante*, at 266. Aside from exaggerating the element of delay, this reasoning unduly minimizes the critical role that cross-examination plays in accurate factfinding. The plurality suggests that "the primary function of the investigator is not to make credibility determinations, but rather to determine simply whether reasonable cause exists to believe that the employee has been discharged for engaging in protected conduct." *Ibid.* Yet, how is the investigator possibly to decide between conflicting accounts of witnesses without making credibility determinations? Should the testimony of one witness who could easily be impeached (if cross-examination were allowed) be sufficient to establish "reasonable cause"?

Cross-examination is a critical element in the truth-determining process. This elementary proposition bears repetition:

> "Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty, or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy." *Greene* v. *McElroy*, 360 U. S. 474, 496 (1959).

See also *Morrissey* v. *Brewer*, 408 U. S. 471, 489 (1972); *Goldberg* v. *Kelly*, 397 U. S. 254, 269 (1970).[6] In the words of Dean Wigmore:

---

[6] The cases in which this requirement has been relaxed have typically involved objective issues, where the Court has deemed cross-examination

"The belief that no safeguard for testing the value of human statements is comparable to that furnished by cross-examination, and the conviction that no statement (unless by special exception) should be used as testimony until it has been probed and sublimated by that test, has found increasing strength in lengthening experience." 5 J. Wigmore, Evidence § 1367 (J. Chadbourn rev. 1974).

Even if there were merit in the plurality's novel view that the possibility of delay outweighs the value of confrontation, this reasoning does not justify the Department's refusal to provide the parties with a list of the witnesses and a summary of each witness' testimony, which would at least enable the parties to make oral or written arguments about why the investigator should not credit the witness' testimony. This would certainly not cause any intolerable delay. This type of hybrid safeguard, although not optimal, is far better than nothing. "Secrecy is not congenial to truth-seeking." *Anti-Fascist Committee* v. *McGrath*, 341 U. S. 123, 171 (1951) (Frankfurter, J., concurring). As I understand the plurality's holding, the requirement that the Department disclose the "substance of the evidence" certainly incorporates the disclosure of the witnesses' names and a summary of their testimony.

The plurality's willingness to sacrifice due process to the Secretary's obscure suggestion of necessity reveals the serious flaws in its due process analysis. It is wrong to approach the due process analysis in each case by asking anew what procedures seem worthwhile and not too costly. Unless a case falls within a recognized exception, we should

a bit less essential than in other contexts, see *Dixon* v. *Love*, 431 U. S., at 113 (records of previous traffic convictions); *Mathews* v. *Eldridge*, 424 U. S., at 344–345 ("routine, standard, and unbiased medical reports"), or have involved contexts where cross-examination poses undue hazards to health and safety, see *Wolff* v. *McDonnell*, 418 U. S. 539, 567–568 (1974) (prison disciplinary hearings), or other unique institutional considerations, see *Goss* v. *Lopez*, 419 U. S. 565, 577–584 (1975) (school suspensions).

adhere to the strongest presumption that the Government may not take away life, liberty, or property before making a meaningful hearing available. The flexibility on the fringes of due process cannot

> "affect its root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Boddie* v. *Connecticut,* 401 U. S. 371, 379 (1971) (footnote omitted).

Such a hearing necessarily includes the creation of a public record developed in a proceeding in which hostile witnesses are confronted and cross-examined.

Traditions of fairness that have been long honored in American jurisprudence support the strongest possible presumption against *ex parte* proceedings. There is no support for the plurality's approval of the entry of a reinstatement order of indefinite duration[7] based on uncross-examined and untested evidence. Therefore, although I agree with the Court to the extent that it affirms the District Court, I, like JUSTICE BRENNAN, believe that the District Court's decision should be affirmed *in toto.*

---

[7] Additionally, the Secretary offers no excuse for the inordinate delay that occurs between a preliminary finding (when an employee is temporarily reinstated) and an actual decision on the merits. In this case, the Administrative Law Judge did not even submit a recommended decision for over seven months, and a 19-month period elapsed before the Department of Labor announced its final decision. As JUSTICE BRENNAN explains, *ante,* at 270–271, this apparently routine and unjustified delay in the postdeprivation decision is an independent reason for striking down the scheme.