569 So.2d 139 (1990)
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, OFFICE OF YOUTH SERVICES
v.
Joseph D. SAVOIE.
No. 89 CA 1690.
Court of Appeal of Louisiana, First Circuit.
October 16, 1990.
*140 Peter J. Giarrusso, Asst. Atty. Gen., Dept. of Justice, Baton Rouge, for appellant.
Daniel M. Landry, III, Lafayette, for appellee.
Robert R. Boland, Jr., Civ. Service Legal Counsel, Dept. of State Civ. Service, Baton Rouge, for Herbert L. Sumrall, Director of the Dept. of State Civ. Service.
Before LOTTINGER and CARTER, JJ., and DOHERTY, J. Pro Tem.
LEWIS S. DOHERTY, III, Judge Pro Tem.[*]
This appeal presents the issue of the correctness of a judgment of a referee, appointed by the Civil Service Commission of the State of Louisiana, which reinstated the plaintiff to his former position after finding that the plaintiff had been denied procedural due process.

FACTS
The Louisiana Department of Public Safety and Corrections, Office of Youth Services Department, employed Joseph D. Savoie as a Juvenile Services Officer II. On April 20, 1988, Kenneth Stewart, Savoie's immediate supervisor, discovered that Savoie was allegedly failing to comply with agency regulations in the performance of his duties as Juvenile Services Officer. That day Stewart met with Savoie to discuss the alleged violations. During this meeting (which was taped by Savoie), Stewart discussed each of the charges with him. After this initial meeting, Stewart returned to his office and typed up five separate Employee Rule Violation Reports (DR-1's). However, Stewart only incorporated on one DR-1 Savoie's responses to that one particular charge.
The following day Stewart brought the written DR-1's to Savoie's office and went over each DR-1 with him. Although Stewart gave Savoie an opportunity to respond, he failed to record any of Savoie's responses on the DR-1 form in the space provided under "Employee Comments." At this time, Stewart informed Savoie that he was recommending termination and that he should hire an attorney. Copies of the DR-1's were subsequently forwarded to the Regional Supervisor, James A. Doucet.
Soon after the second meeting with Stewart, Savoie hired an attorney, and together they drafted a three-page letter, dated April 29, 1988, and delivered it to Doucet. The letter requested a review of the matter, requested additional information regarding the charges, and contained a detailed response to the charges.
Doucet met with Savoie on May 9, 1988. After reviewing each DR-1 with Savoie, Doucet informed him that he concurred with Stewart's disciplinary recommendation. Doucet gave Savoie a chance to respond to the charges, but he also failed to record them. Doucet subsequently forwarded the DR-1's to the appointing authority for review and decision on the matter.[1]
Three days later, on May 12, 1988, Doucet informed Savoie that he was under orders to suspend him, pending additional investigation.
By letter dated May 20, 1988, over the signature of James E. Morris, for Bruce N. Lynn, Secretary of the Department, Savoie was advised that his verbal suspension effective May 13, 1988 was confirmed and that he was being terminated effective May 27, 1988. The letter terminated Savoie for the reasons set forth in the five DR-1's.
Savoie appealed his termination to the Civil Service Commission, and on April 6, 1989, a hearing was held before Bernice R. *141 Pellegrin, a referee appointed by the Civil Service Commission. The referee reinstated Savoie after finding that the Department failed to comply with its own Procedures for Employee Disciplinary Action, and that the Department failed to provide Savoie a "meaningful opportunity" to respond to the charges against him. The referee set forth the following written reasons:
Appellant herein challenges both the sufficiency of the notice provided to him prior to his termination and the adequacy of his opportunity to respond. The evidence establishes that appellant was questioned by Mr. Stewart on April 20, 1988 and that as a result of such questioning, Mr. Stewart wrote up five disciplinary reports (DR-1's). Although Mr. Stewart incorporated some of appellant's answers to the questions propounded on April 20, 1988, in the reports written on April 21, 1988, Mr. Stewart neither recorded appellant's responses to the written reports nor furnished appellant with copies of the written charges, as required by the appointing authority's procedures. Although Mr. Doucet reviewed the DR-1's with appellant and gave appellant an opportunity to respond to him, Mr. Doucet did not provide appellant with the information requested by appellant's attorney, nor did he make a record of appellant's responses. Ultimately, only the charges of misconduct, i.e. the DR-1's, were forwarded to Mr. Riley and to Secretary Lynn's office and a decision to terminate appellant was made without either Mr. Riley or Secretary Lynn being apprised of appellant's responses. Appellant was denied a "meaningful opportunity to invoke the discretion of the decisionmaker" in this case; therefore, appellant was denied due process of law and the termination is void.
The Department, after application for review of the referee's decision was denied by the State Civil Service Commission, perfected a timely appeal to this court.

DISCUSSION
The final decision of the Civil Service Commission is subject to review on any question of law or fact. LSA-Const. Art. 10, § 12. On appellate review, findings of fact of the Commission are not to be overturned in the absence of manifest error. Additionally, a reviewing court should not reverse a Commission's conclusion as to the existence or absence of cause for dismissal unless the decision is arbitrary, capricious or an abuse of the Commission's discretion. However, the judicial review function is not so limited with respect to the Commission's decisions as to jurisdiction, procedure, and interpretation of laws and regulations. Walters v. Dept. of Police of New Orleans, 454 So.2d 106 (La.1984); LSA-R.S. 49:964(G).
Having set forth the appropriate standard of review, we turn to the issues presented by this appeal.
The due process clause provides that the right to life, liberty, and property cannot be deprived except pursuant to constitutionally adequate procedures. In a public employment context, a due process claim depends upon having a property right in continued comparable employment. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). From the record, the parties appear to concede that Savoie has attained classified civil service status with the Department; therefore, he possesses a property right of which he cannot be deprived without cause and procedural due process. LSA-Const. Art. 10, § 8(A); Murray v. Department of Revenue and Taxation, 504 So.2d 561 (La.App. 1st Cir. 1986); writs denied, 504 So.2d 880, 882, 883 (La.1987). Accordingly, we will only examine what kind of process was due to Savoie.

A.
As a tenured employee, Savoie was entitled to "some kind of hearing." However, the hearing "need not be elaborate." Prior to discharge a public employee is only entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present reasons why the proposed action *142 should not be taken. Loudermill, 105 S.Ct. at 1495.
Where the state law provides for a full administrative post-termination hearing and judicial review, the pretermination hearing "need not definitely resolve the propriety of the discharge." Instead, "[i]t should be an initial check against mistaken decisionsessentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. In determining whether a particular pretermination hearing satisfies Loudermill, we must balance the competing interest at stake; namely, "the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of erroneous termination." Id. at 1494.
The referee found that the Department failed to give Savoie adequate notice of the charges against him for two reasons. First, the Department failed to comply with the discovery requested in the letter written by Savoie and his attorney, and second, that one of the DR-1's lacked sufficient detail concerning the charge.
However, as stated above, notice is sufficient if it apprises the employee of the nature of the charges and the general substance of the evidence against him. Loudermill, 105 S.Ct. at 1495; Brock v. Roadway Exp. Inc., 481 U.S. 252, 107 S.Ct. 1740, 1749, 95 L.Ed.2d 239 (1987); and Gniotek v. City of Philadelphia, 808 F.2d 241 at 244 (3d Cir.1986), writ denied, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987). On three occasions prior to his discharge, Savoie's supervisors orally reviewed the charges with him. The record reflects that Savoie responded to the charges at all three meetings. Furthermore, the explanation of the charges and evidence made by Stewart at the first two meetings were sufficient to allow Savoie and his attorney to draft a detailed response prior to the third meeting with Doucet. We cannot agree that Savoie was not provided an opportunity to rebut whether there were reasonable grounds to believe that the charges were true and supported the proposed action. To require more would intrude on the substantial governmental interest in quickly removing an unsatisfactory employee and create an unwarranted administrative burden.

B.
The referee also found that Savoie's pretermination due process rights were violated, because he was denied a "meaningful opportunity to invoke the discretion of the decision maker."
In reaching this decision, the referee placed great emphasis on two factors: First, that both Stewart and Doucet had the power only to make disciplinary recommendations, not the power to terminate Savoie; and second, that she believed the failure of the supervisors, Stewart and Doucet, to convey Savoie's remarks to the terminating authority was a violation of Loudermill and the appointing authority's own procedures.
We disagree. When an elaborate post-termination procedure provided by the Louisiana Civil Service Rules is in place, only the barest of a pretermination procedure is required. Risk of an erroneous termination is minimized by the power of the Civil Service Commission to reinstate the employee with back pay. While we appreciate the impulse behind the referee's decision to expand the protections afforded by Loudermill, the language of the opinion itself and the cases interpreting it do not support such a conclusion. See Loudermill v. Cleveland Board of Education, 844 F.2d 304, 311 (6th Cir.1988); writ denied, 488 U.S. 941, 109 S.Ct. 363, 102 L.Ed.2d 353 and 488 U.S. 946, 109 S.Ct. 377, 102 L.Ed.2d 365 (rejecting the argument that the employee's remarks must be conveyed to the "ultimate decision-maker"). We find this to be especially true where, as in this case, the department's internal rules provide an opportunity to request a hearing with the terminating authority, and the employee fails to do so. The Department's internal Employee Rules and Disciplinary Procedures provide as follows:

*143 If the employee is still dissatisfied with the final recommendation at the agency level, he may request in writing, within seven (7) days of receipt of the notice from the Unit Head, that the Secretary or his designee conduct a hearing. The request must be accompanied by a copy of the DR-1, the date the employee received a completed copy of the DR-1 from the Unit Head, and the remedy the employee is seeking.
A state should not be held to have violated due process when it has made procedural protection available and the employee has simply refused to avail himself of them.

C.
Although the Department may not have followed its own internal disciplinary procedures, we find that the violations are not of a constitutional dimension. A breach of internal rules violate the constitution only when the procedures promised are denied in such a manner that the constitutional minimum is itself denied or an independent constitutional deprivation is effected. Levitt v. University of Texas, 759 F.2d 1224, 1230 (5th Cir.1985); Franceski v. Plaquemines Parish School Bd., 772 F.2d 197 at 200 (5th Cir.1985); and Brown v. Texas A & M University, 804 F.2d 327, 335 (5th Cir.1986). The facts disclose that Savoie received notice of the charges against him, an explanation of the evidence, and an opportunity to contest the charges. Even if the Department failed to follow its own rules, it nevertheless gave Savoie all he was entitled to under the Constitution.[2]
For the above and foregoing reasons, we conclude the referee reinstated Savoie based upon an erroneous interpretation of Loudermill and progeny. Therefore, the judgment of the referee is REVERSED and the case is REMANDED for a proceeding not inconsistent with this opinion.
REVERSED AND REMANDED.
NOTES
[*] Judge Lewis S. Doherty, III, retired, is serving as judge pro tem by special appointment of the Louisiana Supreme Court to fill the vacancy created by the temporary appointment of Judge Melvin A. Shortess to the Supreme Court.
[1] Even though Doucet testified at the hearing that he forwarded the letter submitted by Savoie and his attorney, the referee found that only the DR-1's were actually sent.
[2] However, this court is troubled over the failure of the Department to follow its own internal rules which affect the rights and liabilities of its employees. The Department's breach of its own internal rules might be a violation of state law. There is a strong public interest in requiring a government agency to follow its own rules and regulations. See Cent. La. Elec. Co. v. La. Pub. Serv. Comm., 377 So.2d 1188 (La.1979); but cf. Lombas v. Department of Police, 467 So.2d 1273 (La.App. 4th Cir.), writ denied, 470 So.2d 120 (1985). Since the question was not properly briefed and argued before the referee, we refrain from deciding this issue.