[Cite as *Hall v. Youngstown Water Dept.*, 2012-Ohio-1411.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DAVID M. HALL, | ) | |
| | ) | CASE NO. 11 MA 16 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| YOUNGSTOWN WATER DEPT., et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from Common Pleas
Court, Case No. 10 CV 210.

JUDGMENT: Affirmed.

APPEARANCES:
For Plaintiff-Appellant: David M. Hall, Pro-se
19 East Ravenwood Street
Youngstown, OH 44507

For Defendant-Appellant: Attorney Dan Pribich
Deputy Law Director
Attorney Margaret Koval
Senior Assistant Law Director
26 S. Phelps Street
Youngstown, OH 44503

JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Gene Donofrio

Dated: March 23, 2012

DeGenaro, J.

{¶1} Pro-se Plaintiff-Appellant, David M. Hall, appeals the January 21, 2011 judgment of the Mahoning County Court of Common Pleas dismissing his claims against Appellees, the Youngstown Water Department (YWD), Youngstown Mayor Jay Williams, Youngstown Water Commissioner John Casciano and YWD Collections Supervisor Candace Norwood. Hall's argument that the court erroneously dismissed his complaint is meritless. The trial court correctly granted Appellees' motion to dismiss because Hall failed to exhaust his administrative remedies prior to filing suit. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶2} On January 7, 2010, Hall returned to his Youngstown residence to discover his water service had been disconnected. A disconnection notice attached to his doorknob stated: "Your water bill amounting to $99.58 is unpaid and has been evidently overlooked. Your water has been disconnected. The reconnection charge is $40.00."

{¶3} On January 22, 2010, Hall filed a Complaint against YWD in the Mahoning County Court of Common Pleas, in which he alleged that YWD improperly disconnected his water service without first providing him with a written disconnection notice. He alleged claims of due process violations and negligence, and sought compensatory, punitive and general damages. A series of filings by the parties followed, including First and Second Amended Complaints, which, but for adding additional parties, were substantively identical to the allegations made in Hall's original complaint. Notably, Hall does not contest that he was delinquent in paying his water bill.

{¶4} Pertinent to this appeal, Appellees filed a motion to dismiss the Second Amended Complaint on December 10, 2010, again arguing, as they had in response to Hall's First Amended Complaint, that it should be dismissed because Hall failed to exhaust his administrative remedies.

{¶5} On December 22, 2010, the magistrate issued a decision granting Appellees' motion to dismiss, concluding that Hall had failed to exhaust his administrative remedies prior to initiating suit, specifically Rule 13.1 of the YWD Rules and Regulations. Further the magistrate concluded that "This Rule and the process contained therein, satisfies the administrative remedies doctrine as it provides for notice, hearing, and relief."

**{¶6}** Hall filed objections to the magistrate's decision and Appellees responded. On January 21, 2011, the trial court issued a judgment entry adopting the magistrate's decision as its own.

## Failure to Exhaust Administrative Remedies

**{¶7}** Hall asserts two assignments of error on appeal, which essentially raise the same issue and will be discussed together:

**{¶8}** "The trial court abused its discretion by failing to grant Plaintiff's opposition to Defendant's motion to dismiss the Complaint filed December 15, 2010."

**{¶9}** "The trial court abused its discretion in dismissing Plaintiff's Complaint for failure to exhaust administrative remedies prior to seeking judicial action."

**{¶10}** Dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate if, after all factual allegations of the complaint are presumed true and all reasonable inferences are made in favor of the nonmoving party, it appears beyond doubt that the nonmoving party can prove no set of facts entitling him to the requested relief. *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, ¶13. A Civ.R. 12(B)(6) motion to dismiss is procedural, and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). In resolving a Civ.R. 12(B)(6) motion to dismiss, a court must confine its review to the allegations contained in the complaint. *Butler v. Jordan*, 92 Ohio St.3d 354, 356, 750 N.E.2d 554 (2001), fn. 4. Whether a trial court properly granted a motion to dismiss for failure to state a claim presents a question of law and is therefore subject to a de novo review on appeal. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶5.

**{¶11}** It is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Jones v. Chagrin Falls*, 77 Ohio St.3d 456, 462, 674 N.E.2d 1388 (1997), quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). The purpose of the doctrine is to "prevent [ ] premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, as well as to afford the

parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

{¶12} "[I]n Ohio, the exhaustion-of-administrative-remedies doctrine is a court-made rule of judicial economy." *Nemazee v. Mt. Sinai Medical Center*, 56 Ohio St.3d 109, 111, 564 N.E.2d 477 (1990), citing *G.S.T. v. Avon Lake*, 48 Ohio St.2d 63, 65, 357 N.E.2d 38 (1976). Thus, "[t]he failure to exhaust administrative remedies is not a jurisdictional defect but is rather an affirmative defense, if timely asserted and maintained." *Dworning v. Euclid*, 119 Ohio St.3d 83, 2008-Ohio-3318, 892 N.E.2d 420, ¶11, citing *Jones* at syllabus.

{¶13} There are two exceptions to the exhaustion doctrine. First, "when there is a judicial remedy that is intended to be separate from the administrative remedy." *Dworning* at ¶10 (holding that because the legislature provided a clear private cause of action to remedy discriminatory practices, which is superior to any exhaustion requirement, a public employee is not required to first exhaust the public employer's administrative remedies before pursuing a civil action.) *Accord Basic Distrib. Corp. v. Ohio Dept. of Taxation*, 94 Ohio St.3d 287, 290, 762 N.E.2d 979 (2002). The second exception is when the administrative body lacks the authority to grant the relief sought. *Gates Mills Invest. Co. v. Pepper Pike* (1978), 59 Ohio App.2d 155, 167, 392 N.E.2d 1316. This is also known as the "vain act" exception. "A vain act is defined in the context as lack of authority to grant administrative relief and not in the sense of lack of probability that the application for administrative relief will be granted." *Id.* at 167. For example, in *Salvation Army v. Blue Cross & Blue Shield of N. Ohio*, 92 Ohio App.3d 571, 579, 636 N.E.2d 399 (8th Dist.2001), the court held that the plaintiff was not required to exhaust administrative remedies with regard to its defamation claim since the Ohio Department of Insurance lacked the authority to grant the relief requested under that claim.

{¶14} Hall first contends that the administrative procedure offered by the YWD is constitutionally inadequate. "The fundamental requirement of procedural due process is notice and hearing, that is, an opportunity to be heard." *Korn v. Ohio State Med. Bd.*, 61 Ohio App.3d 677, 684, 573 N.E.2d 1100 (1988), citing *Luff v. State*, 117 Ohio St. 102,

157 N.E. 388 (1927). "Determining the adequacy of predeprivation procedures requires consideration of the Government's interest in imposing the temporary deprivation, the private interests of those affected by the deprivation, the risk of erroneous deprivation through the challenged procedures, and the probable value of additional or substitute procedural safeguards." *Brock v. Roadway Express,* Inc., 481 U.S. 252, 262, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987).

{¶15} The YPD Rules and Regulations provide an adequate administrative procedure that conforms to due process requirements. Several of the rules address notice:

### 3.11 METERED BILLS BECOME DELINQUENT

Bills become delinquent when not paid by the date indicated on the bill.

### 3.12 SERVICE DISCONTINUED

Service may be discontinued thirty (30) days after the previous bill was mailed and remains unpaid and delinquent.

\* \* \*

### 3.14 SERVICE MAY [SIC] DISCONTINUED DUE TO DELINQUENCY

Whenever a Customer or Consumer becomes delinquent in the payment of services, the supply of water may be discontinued to any property of such a Customer or Consumer. Notice of such action shall have been previously given as provided in Section 3.12 regardless of whether such indebtedness was incurred at the property where service is discontinued or for any other service provided to such Customer or Consumer at notice address. In the event of a proposed discontinuation of service, Consumers and Customers shall be entitled to notice and a hearing pursuant to Chapter 13 of these Rules. (YWD Rules and Regulations, Rule 3.11, 3.12, 3.14.)

{¶16} Turning next to the hearing component of due process, Chapter 13 of the Rules provides a detailed administrative hearing procedure:

**13.1   REQUESTING A HEARING**

Customers and Consumers shall have the right to request a hearing in writing for the reasons and purposes set forth in these Rules.   The request for a hearing must be made by the Customer or Consumer or person acting on their behalf at the office of the Water Department to an employee during regular business hours.  The Water Department reserves the right to require that the applicant sign a Request for Hearing form.  Whenever a Customer or Consumer timely requests a hearing regarding the right of the Water Department to discontinue service during the pendency of the hearing, service shall not be denied to them unless, and until authorized to do so, by the decision of the hearing officer or upon prior settlement of the dispute.   However, a Customer or Consumer may not request a hearing for the sole purpose of preventing the discontinuance of service.  A Consumer, who is not a Customer, may not dispute at a hearing the Water Department's claims of delinquency in the water service account to the Customer not incurred by the Consumer.   The hearing shall be limited to the right of the Water Department to discontinue service.  (YWD Rules and Regulations, Rule 13.1)

**{¶17}** Chapter 13 of the YWD Rules goes on to provide that the consumer or customer shall be provided with standards and procedures pursuant to which the hearing will be governed (Rule 13.2); timetable for a hearing date (Rule 13.3); consumer access to records (Rule 13.4); appointment of hearing officer (Rule 13.5); consumer rights at the hearing (Rule 13.6); and communication of the hearing outcome (Rule 13.7).

**{¶18}** The Rules provide notice and an adequate administrative process as contemplated by due process.  Hall's constitutionality argument is meritless.

**{¶19}** Second, neither of the exceptions to the exhaustion doctrine apply.  There is no judicial remedy intended to be separate from the administrative one.  Hall points to no statute creating a private right to sue for grievances regarding a municipal water bill.

**{¶20}** Further, YWD has the authority to provide the relief sought.  Article XVIII,

Section 4 of the Ohio Constitution authorizes municipalities, such as the City of Youngstown, to provide water service to its residents and other consumers. The City of Youngstown Charter authorizes the creation of a Division of Water, to be run by the Commissioner of Water who "shall adopt and enforce, with the approval of the Mayor, all rules and regulations governing the Division of Water, and fix the rates and conditions for supplying of water." Youngstown City Charter § 45. Pursuant to this mandate, the YWD adopted the Rules and Regulations cited above. When Hall applied for water service, he agreed to be bound by the Rules:

**3.7 APPLICANTS MUST AGREE TO CONFORM TO CODIFIED ORDINANCES, RULES AND REGULATIONS**

Applicants for water shall make such deposits or assessments as may be required, and shall agree to abide by Codified Ordinances of the City of Youngstown and the Water Department Rules and Regulations pertaining to the use of water. Applicant shall sign the Water Department Form 1. Copies of the Rules and Regulations and Deposits and Assessments and Rates shall be available from the Water Department. (YWD Rules and Regulations, Rule 3.7.)

**{¶21}** Because none of the exceptions to the exhaustion doctrine apply, the trial court correctly dismissed Hall's claims for his failure to exhaust the available administrative remedies prior to filing suit. Accordingly, Hall's assignments of error are meritless, and the judgment of the trial court is affirmed.

Waite, P.J., concurs.

Donofrio, J., concurs.