# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-1873

ROADWAY EXPRESS, INC.,

*Petitioner*,

*v.*

UNITED STATES DEPARTMENT OF LABOR,
ADMINISTRATIVE REVIEW BOARD,

*Respondent*,

*and*

PETER CEFALU,

*Intervenor*.

---

On Petition for Review of a Final Order
of the Administrative Review Board.
ARB Case Nos. 04-103 and 04-161.

---

ARGUED DECEMBER 6, 2006—DECIDED JULY 25, 2007

---

Before POSNER, RIPPLE, and WOOD, *Circuit Judges*.

WOOD, *Circuit Judge*. Peter Cefalu was terminated from his position as a truck driver with Roadway Express, Inc. ("Roadway") on February 21, 2002. That happened to be the same day on which he provided testimony in support of a fellow employee's grievance hearing against Roadway. On August 19, 2002, Cefalu filed a complaint with the Occupational Safety and Health Administration ("OSHA"), an agency within the Department of Labor

("DOL"), alleging that he had been fired in retaliation for his support of his co-worker in the grievance hearing and that this activity was protected under the Surface Transportation Assistance Act of 1982 ("STAA"), 49 U.S.C. § 31105.

Roadway responded that Cefalu's termination had nothing to do with his testimony. Instead, the company asserted, he was fired because he had lied on his employment application when he failed to report previous serious truck driving accidents and the fact that he had lost his earlier job after those accidents. For reasons that are unclear, however, Roadway refused to comply with discovery orders in the DOL proceedings; one of the orders it flouted asked who first alerted the company to Cefalu's driving history. As a sanction, the DOL Administrative Law Judge ("ALJ") ruled that Roadway could not present evidence that it had learned from its undisclosed informant. This sanction prevented Roadway from defending the termination of Cefalu by using his driving record. The Administrative Review Board approved the ALJ's ultimate decision in Cefalu's favor. In its petition to this court, Roadway contests the discovery sanction as well as the substantive ruling in Cefalu's favor.

**I**

In 1982, Congress enacted the STAA to combat the "increasing number of deaths, injuries and property damage" resulting from commercial trucking accidents. *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 258 (1987) (quoting 128 Cong. Rec. 32509, 32510 (1982)). One measure the statute adopted to further its goals was a provision forbidding an employer from discharging or discriminating against an employee for taking actions such as filing a complaint or testifying in a safety-related proceed-

ing that point out an employer's safety violations. 49 U.S.C. § 31105(a)(1).

Cefalu worked as a commercial truck driver for Roadway from November 22, 1999, to February 21, 2002. He belonged to Teamsters' Local 200, as did Jonathan Gomaz, another Roadway driver. After Roadway discharged Gomaz for allegedly falsifying his driving log, Gomaz filed a grievance. In the ensuing proceedings, Cefalu provided a written, notarized statement asserting that a Roadway supervisor had asked Cefalu to falsify his driving log. The grievance panel reinstated Gomaz.

Thomas Forrest, Roadway's manager for labor relations, attended the grievance hearing. After it was over, he telephoned Robert Schauer, the assistant terminal manager at Roadway's Milwaukee facility, to inform him of the reinstatement. Forrest claimed that he did not tell Schauer about Cefalu's statements. Later that same afternoon, February 21, however, Schauer participated in a conference call with Phillip Stanoch, Roadway's vice-president for labor relations, and Mike Jones, Roadway's relay manager. After the call, Jones called in a union representative, telephoned Cefalu, and then fired Cefalu for falsifying his employment application. Cefalu filed a complaint with OSHA on August 19, 2002, alleging that Roadway had violated the STAA when it discharged him. After OSHA dismissed his complaint for lack of merit, Cefalu appealed and his case was assigned to an ALJ.

At that point, Cefalu served interrogatories on Roadway, including one asking the company to identify all persons who provided information relevant to his discharge. Roadway refused to furnish the name of the confidential source who first informed the company about Cefalu's driving record. Roadway claimed that revealing its source would put the informant at risk of retaliation and hurt its business operations. The ALJ rejected this

argument and granted Cefalu's motion to compel the information. The judge noted that Roadway had not invoked any recognized privilege for withholding the information, and that it had even acknowledged that its stance warranted a sanction. Cefalu requested an entry of default judgment, but the ALJ instead chose the lesser sanction of precluding Roadway from presenting any evidence that arose from the confidential source.

As a practical matter, this sanction spelled the end to Roadway's defense, since Roadway had no other independent evidence indicating that the termination was not retaliatory. The ALJ therefore concluded that Cefalu had proved by a preponderance of the evidence that he was fired for engaging in the protected activity of providing testimony at the Gomaz grievance hearing. The Board affirmed the ALJ's decision.

## II

Roadway has petitioned for review of the Board's order requiring reinstatement (an automatic remedy for an STAA violation), back pay, and attorney's fees and expenses for Cefalu. It argues first that the ALJ deprived it of its "fundamental right to due process" by imposing the evidentiary sanction; on the merits, it argues that Cefalu's discharge did not violate the STAA; and finally, it urges that it would violate public policy to reinstate Cefalu.

We find it preferable first to take up Roadway's argument that Cefalu failed to make out a *prima facie* case that the company's discharge of Cefalu violated the STAA. If this were correct, we would not need to evaluate the discovery sanction imposed on Roadway because its effect did not come into play until the point at which Roadway was obliged to offer a legitimate reason for the adverse action against the employee.

**A**

This circuit allows a wide variety of retaliation claims to be approached for purposes of summary judgment motions either through a direct or an indirect approach. *Rogers v. City of Chicago*, 320 F.3d 748, 753-54 (7th Cir. 2003). The parties seem confused about which was used here, but the dispute is beside the point. In this case, as in any in which the decisionmaker ruled on the ultimate question, the taxonomy loses its importance. We review the method that the ALJ seems to have used only to highlight the questions he was asking. It was similar to the familiar one launched by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The employee has the initial burden of showing "1) that he engaged in protected activity under the STAA; 2) that he was the subject of adverse employment action; and 3) that there was a causal link between his protected activity and the adverse action of his employer." *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir. 1987). Once he has done so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's rejection. Then the employee has an opportunity to show that the employer's stated reason for the adverse action was pretextual and that intentional discrimination was at work. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). In retaliation cases, this court has observed that "[t]he fact that the defendant may be able to produce evidence that the plaintiff was fired for a lawful reason just creates an issue of fact: what was the true cause of the discharge." *Stone v. City of Indianapolis*, 281 F.3d 640, 643 (7th Cir. 2002).

But, as we said earlier, the burden-shifting tests are normally used to decide whether summary judgment is proper. Here, the ALJ reached a final decision on the merits of Cefalu's claim. We thus look at the various steps along the way to the judge's result only for whatever light they throw on the ultimate conclusion.

**B**

Roadway contends that the Gomaz hearing was not an activity protected under the STAA because it was not a "proceeding relating to a violation of a commercial motor vehicle safety rule, regulation, standard, or order." 49 U.S.C. § 2305(a) (STAA). Roadway is therefore arguing that the alleged falsification of driving logs, the misconduct Gomaz had allegedly committed, is unrelated to vehicle safety. DOL sees matters differently: it takes the position that "driving logs serve important safety purposes of ascertaining whether a driver has reached his maximum hours."

Even apart from any deference we might owe to the Department's views, DOL has the better of this argument. At least two of our fellow circuits have characterized driving logs as a measure of safety compliance, and driving-log rules as safety regulations. See *United States v. Anderson*, 339 F.3d 720, 723 (8th Cir. 2003) (labeling "an incomplete driving log" as a "violation of . . . [a] safety regulation[]"); *Darrell Andrews Trucking, Inc. v. Fed. Motor Carrier Safety Admin.*, 296 F.3d 1120, 1123 (D.C. Cir. 2002) (identifying the underlying purpose of mandatory driving logs as "ensur[ing] that truck drivers are awake and alert on the road"). The same message is conveyed by the applicable transportation regulations, which describe driving logs as

> the primary regulatory tool used by the Federal government, State governments, drivers, and commercial motor carriers to determine a driver's compliance with the maximum hours of service limitations . . . . [They are] used to place drivers out of service when they are in violation of the maximum limitations at the time of inspection . . . [and to] determin[e] a motor carrier's overall safety compliance status in controlling excess on duty hours, a major contributory factor in fatigue induced accidents.

47 Fed. Reg. 53383-01. We see no reason to disagree with the views of our sister circuits and the DOL; indeed, we would come to the same conclusion writing on a clean slate. If, as Cefalu testified, a Roadway manager ordered Gomaz to falsify his driving logs, that would have been a violation of federal vehicle safety regulations. Cefalu's testimony is therefore protected under the STAA.

**C**

Roadway next claims that it could not have retaliated against Cefalu because its decisionmaker did not know about Cefalu's protected activity. The ALJ, however, found otherwise after he assessed the credibility of the witnesses. Although Forrest testified that he did not tell Schauer about Cefalu's testimony at Gomaz's hearing, when he telephoned Schauer to report the outcome of the hearing, the ALJ did not believe him. Instead, the Board credited the ALJ's findings that Forrest told Schauer, and then that someone informed Stanoch, the vice president for labor relations. The Board expressly found that "Stanoch knew about Cefalu's protected activity when he discharged him."

The Board was "obligated by regulation to treat the ALJ's findings as conclusive if supported by substantial evidence." See *Brink's, Inc. v. Herman*, 148 F.3d 175, 178 (2d Cir. 1998) (citing 29 C.F.R. § 1978.109(c)(3)). Reviewing courts must also sustain an ALJ's findings of fact "'unless they are 'unsupported by substantial evidence' in the record as a whole.'" *Brink's*, 148 F.3d at 178 (quoting 5 U.S.C. § 706(2)(A)). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brink's*, 148 F.3d at 179 (internal quotation marks omitted).

We find substantial evidence to support the ALJ's credibility determination. Roadway's contention that

Stanoch lacked knowledge of Cefalu's testimony depended entirely on the believability of Forrest's testimony. Once the ALJ and the Board rejected Forrest's version of the exchange, they were free to draw the inference that Stanoch knew about Cefalu's role at the Gomaz hearing. This also permitted the ALJ to infer that there was a basis in the record "to conclude that Forrest [may] have deviated from his usual practice of not reporting to Schauer the details of grievance hearings" and that Schauer passed along the information in his conversation with supervisor Stanoch not more than a couple of hours later. Given the seriousness of Cefalu's allegations, the ALJ was also entitled to conclude that it was more likely than not that his testimony would be reported up the chain of command. Combined with the timing of Cefalu's STAA activity and Roadway's adverse action in this case, there is substantial evidence to support the administrative result.

**III**

This takes us to Roadway's challenge to the discovery sanction. Roadway argues both that the sanction had the effect of depriving it of its fundamental right to due process, and that it "was wholly disproportionate to Roadway's isolated and non-prejudicial discovery violation." We consider these points in turn.

**A**

Roadway spends some time arguing that it was entitled to due process in this hearing, because it had a protected interest in its ability to discharge an employee for cause, citing *Brock*, 481 U.S. at 261. But no one contests this proposition. The question is rather whether the procedures the ALJ followed were consistent with the statute and

regulations, and if so, whether anything the judge did violated the Fifth Amendment's Due Process Clause. Roadway also argues that the result of the sanction was that the ALJ rendered a decision "on an issue that was not fully and fairly litigated at an administrative hearing," citing *Yellow Freight Sys. v. Reich*, 8 F.3d 980, 987 (4th Cir. 1993), which in turn relied on *Yellow Freight Sys. v. Martin*, 954 F.2d 353, 358 (6th Cir. 1992). This is but another route to the same due process claim.

The agency's rules unambiguously permit the ALJ to impose, as a discovery sanction, an order excluding evidence that a non-complying party wishes to introduce in support of its claim. See 29 C.F.R. § 18.6(d)(2)(iii). This is undoubtedly why Roadway has turned to the Constitution for relief. But nothing in the Due Process Clause forbids an adjudicator (either a court or an administrative body) from imposing reasonable rules to structure the proceedings before it. The logic of Roadway's position is that even something like FED. R. CIV. P. 37(b)(2)(B), which allows a court to punish noncompliance with an order requiring discovery by "[a]n order . . . prohibiting [the disobedient party] from introducing designated matters in evidence," is unconstitutional. Such a conclusion would be flatly inconsistent with the Supreme Court's holdings in *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706-07 (1982), upholding the use of Rule 37(b)(2)(A) to regard the critical fact of personal jurisdiction as established, and *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976), finding no abuse of discretion in the imposition of the extreme sanction of dismissal under Rule 37(b)(2)(C) for a discovery violation. If Roadway had chosen to obey the ALJ's order and provide the information requested in the interrogatories, it would have been free to use the information in any way it wanted.

Roadway knew that its non-compliance with the discovery order could lead to significant sanctions. Yet even after the ALJ gave Roadway three more days to comply while refraining from ruling on Cefalu's motion for default judgment, Roadway decided not to disclose the identity of its confidential informant. Again, the ALJ noted that Roadway "alleged [no] recognized privilege that would protect the source's identity from discovery." To this day, Roadway has not challenged that assessment. There is no due process violation on these facts.

**B**

Roadway next argues that the ALJ chose a disproportionately harsh sanction. We review the agency's choice of a sanction for abuse of discretion, so long as the sanction is "within [the] statutory limits" imposed on the agency. *Chapman v. U.S. Commodity Futures Trading Comm'n*, 788 F.2d 408, 411 (7th Cir. 1986). The Department of Labor has issued regulations that govern an ALJ's sanctions for a party's failure to comply with an order of court. 29 C.F.R. § 18.6(d)(2). One of them permits an ALJ to "[r]ule that the non-complying party may not introduce into evidence or otherwise rely upon testimony by such party, officer or agent, or the documents or other evidence, in support of or in opposition to any claim or defense." 29 C.F.R. § 18.6(d)(2)(iii). This allowance is prefaced by language giving the ALJ some flexibility in how he administers the sanctions regime, under which, *"for the purpose of permitting resolution of the relevant issues and disposition of the proceeding without unnecessary delay despite such failure*, [he] may take such action in regard thereto as is just . . . ." 29 C.F.R. § 18.6(d)(2) (emphasis added).

To determine whether a judge has abused his discretion by sanctioning a party, we too look at the proportionality of the sanction to the discovery violation, but only to ask

whether the judge's decision was a reasonable one—not to decide whether we might have done the same in the judge's place. See *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 223 (7th Cir. 1992).

In the DOL proceedings, Roadway failed to provide a complete answer to an interrogatory that sought information critical to Cefalu's case. Recall that Roadway was defending its discharge of Cefalu on the ground that he lied on his employment application. Cefalu's only hope was to show that any such lies were not the true reason why Roadway acted as it did. In order to prove pretext, Cefalu was entitled to know the source of the information that allegedly led to his discharge. The source's identity would likely help Cefalu show when and how Roadway had learned of the inaccuracies on his job application. If, for example, Roadway had known of the discrepancy for months or years, Cefalu would have had significant circumstantial evidence of pretext.

Roadway's non-compliance made it impossible for Cefalu to present his theory of the case and for the ALJ to resolve the claim on the merits. The ALJ's response was to level the playing field as well as he could through a sanction. If Roadway had evidence from other sources, it could have introduced it. Although we recognize that the sanction as a practical matter may have had an enormous impact on Roadway's case, the ALJ did not select an impermissibly disproportionate sanction for Roadway's noncompliance with his orders. We cannot conclude that the ALJ abused his discretion.

**IV**

We next consider Roadway's challenge to the Board's remedial order. The STAA states that if DOL concludes that an employer terminated an employee in retaliation for

STAA-protected activity, "the Secretary shall order the [employer] to . . . reinstate the complainant to the former position with the same pay and terms and privileges of employment." 49 U.S.C. § 31105(b)(3)(A). Although this requirement is apparently absolute, we recognize that there must be practical limits to it. If, for example, Cefalu were now blind, we would not require Roadway to reinstate him as a truck driver. If Roadway no longer existed, we would not force it to reincorporate for the purposes of reinstating Cefalu. In short, if the premise behind the statutory remedy, that the *status quo ante* can be restored, fails, then the Board is entitled to adopt a remedy that is the functional equivalent of the one prescribed by the statute.

The Supreme Court has noted the problem with a "reinstatement" remedy—that in some instances it could obligate an employer to reinstate an incompetent or unqualified employee. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977). There, addressing a First Amendment claim, the Court wrote that

> [t]he constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct. A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.

*Id.* at 285-86. In that "mixed motive" case, the Court concluded that after the complaining party showed that his protected conduct was a substantial or motivating factor behind the adverse action, the burden should shift to the

other party (there, a school district) to show that it would have reached the same decision even in the absence of the protected conduct. *Id.* at 287.

The same general approach applies to a case like Cefalu's. He has proven, as the Board found, that his protected conduct was a substantial or motivating factor behind his termination. For purposes of the STAA, that is enough to show that Roadway violated the law. But it is not necessarily the case that Cefalu is entitled to reinstatement, if after appropriate proceedings Roadway can show that it would have terminated him even in the absence of his protected conduct. On the question of remedy, Roadway was entitled to show that Cefalu indeed dissembled in his employment application to the company. Cefalu wrote that he "resigned" from his previous position. In fact, according to the minutes of the Motor Carrier Labor Advisory Council meeting on September 1, 1998, at which Cefalu unsuccessfully contested his termination, he was laid off because of his "recklessness resulting in a serious accident while on duty . . . [when he] fell asleep and struck a guardrail." Cefalu, in turn, should have the opportunity to show that Roadway does not terminate everyone with such a record, perhaps if the person has had a clean record for a certain number of years in the interim, or other extenuating circumstances exist.

The ALJ's evidentiary sanction may have been necessary to address Roadway's noncompliance with the discovery order for the merits phase of the case, because Roadway's stonewalling deprived Cefalu of his ability to present his defense. No such effect, however, was present at the remedial stage. Roadway's withholding of the identity of its informant in no way prevented Cefalu from contesting Roadway's claim that reinstatement was an inappropriate remedy because of public safety. Nothing about how, why, or when Roadway learned about Cefalu's misstatements

is pertinent to Cefalu's effort to keep his job despite his conceded earlier problems. If the facts are as Roadway contends, then public-safety concerns, or even regulatory rules, may make it impossible for Roadway to reinstate Cefalu. Roadway therefore should have been permitted to refer to Cefalu's earlier driving record during the remedial stage. The Board abused its discretion in disallowing Roadway's public-safety argument against the reinstatement remedy. We therefore remand the case to the Board for further proceedings on remedy.

## V

Last, we consider Cefalu's motion asking this court to strike Roadway's brief and part of Roadway's Supplemental Appendix. We criticized the use of motions to strike for this purpose in *Redwood v. Dobson*, 476 F.3d 462, 470-71 (7th Cir. 2007). What Cefalu probably wanted was either summary affirmance or dismissal of the petition, either of which would be a proper sanction in an appropriate case. That said, we read the statement of facts in Roadway's brief with some concern. Much of what Roadway states as fact, using citations to the record, is based only on the offer of proof that Roadway's attorney presented to the ALJ rather than any actual proof. Particularly troublesome is Roadway's statement that "[t]he reasons Cefalu concealed [his driving history from Roadway] . . . was that he knew divulging it would eliminate any chance of Roadway hiring him." Roadway's record citation for this "fact" is its counsel's characterization of Cefalu's action as such to the ALJ. This does not satisfy Seventh Circuit Rule 28(c), which states that "[n]o fact shall be stated in this part of the brief unless it is supported by a reference to the page or pages of the record or the appendix where that fact appears."

Whether by deceit or laziness, Roadway's failure to comply with Circuit Rule 28 is inexcusable. Although we decline to impose more than a warning on Roadway and its counsel at this time, we will not hesitate to go further if similar violations recur.

## VI

In summary, we DENY Roadway's petition for review to the extent that it challenges the Board's decision that it violated the STAA and the Board's affirmance of the sanction that the ALJ imposed during the merits stage. We GRANT the petition to the extent that it challenges the use of the sanction in the remedy stage of the proceedings. We REMAND the case to the Board for reconsideration of the appropriate remedy for the violation.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*