In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1315

ROADWAY EXPRESS, INC.,

*Petitioner*,

*v.*

UNITED STATES DEPARTMENT OF LABOR,

*Respondent*,

and

PETER P. CEFALU,

*Intervenor*.

On Petition for Review of a Final Order
of the Administrative Review Board.
ARB Case Nos. 04-103, 04-161, and 08-110

ARGUED DECEMBER 4, 2009—DECIDED JULY 22, 2010

Before POSNER, RIPPLE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* It has been more than seven years since Roadway Express ("Roadway") fired Peter Cefalu. The litigation over this action, however, lives on; this petition for review represents the parties' second trip before this court. See *Roadway Exp., Inc. v. United States*

*Dep't of Labor*, 495 F.3d 477 (7th Cir. 2007) (*Roadway I*). The case originated in August 2002, when Cefalu filed a complaint with the Occupational Safety and Health Administration alleging that he had been sacked in violation of the Surface Transportation Assistance Act of 1982, 49 U.S.C. § 31105. Roadway dismissed Cefalu on February 21, 2002, just after he submitted a notarized statement at a co-worker's grievance hearing asserting that Roadway had instructed him to falsify his driving log.

At a hearing before an administrative law judge ("ALJ") at the Department of Labor, Roadway asserted that it fired Cefalu because it recently had learned that he had lied in 1999 on his job application. Though Cefalu's application stated that he had voluntarily left two previous jobs, in fact he had lost both positions on grounds of reckless driving. During discovery, Cefalu sought to uncover the source of Roadway's information, but Roadway steadfastly refused to comply with the ALJ's discovery order requiring it to divulge this piece of evidence. In response, the ALJ imposed an evidentiary sanction that prohibited Roadway from introducing any information that the company had learned from its source. Unable to cite Cefalu's dishonesty or accident history, Roadway failed to rebut Cefalu's argument that he had been fired for engaging in protected conduct under the Act. The ALJ entered judgment for Cefalu and ordered his reinstatement; the Administrative Review Board ("ARB") affirmed.

When Roadway filed its first petition for review with this court, we upheld the imposition of the evidentiary sanction against Roadway at the merits stage. See *Road-*

*way I*, 495 F.3d at 484-85. We found, however, that the sanction should not have gone so far as to prevent Roadway from arguing that public-safety concerns made Cefalu's reinstatement impossible or impractical. See *id.* at 485-86. We remanded the case for further proceedings to determine whether Roadway would have fired Cefalu in the absence of his protected conduct. See *id.* On remand, first the ALJ and then the ARB concluded that Roadway failed to meet this burden. (Because the petition for review addresses the ARB's decision, we will not mention the ALJ separately unless there is some particular reason to do so.)

Roadway argues in its new petition that the ARB misinterpreted the scope of the remand order when it prevented Roadway from presenting arguments related to Cefalu's dishonesty. In addition, Roadway points to Cefalu's five previous trucking accidents as evidence that public-safety considerations weigh decisively against Cefalu's reinstatement. The ARB rejected these arguments, and we find that its ruling is supported by substantial evidence.

## I

Because the parties fiercely contest the reach of *Roadway I*, we should begin by rehearsing the relevant aspects of that decision. Our opinion was careful to distinguish between the use of the evidentiary sanction at the merits stage from its use at the remedial stage of the proceedings. At the merits phase, precluding Roadway from relying on information derived from its undisclosed

source was an appropriate sanction, we reasoned, because otherwise Cefalu would be unable to show that Roadway's proffered explanation was pretextual. *Id.* at 484-85. For instance, the source could have revealed that Roadway had known about Cefalu's driving record long before it fired him. *Id.* at 485. That the sanction effectively doomed Roadway's merits case was unfortunate, but the alternative would have forced Cefalu to litigate with one hand tied behind his back. *Id.*

Prevailing on the merits did not, however, mean that Cefalu was automatically entitled to have his old job back. *Id.* This may seem to be at odds with the Act, which provides that any employee who has been fired for engaging in protected activity must be reinstated to her former position without any changes in pay or other benefits. 49 U.S.C. § 31105(b)(3)(A). But reinstatement is not always a proper remedy, as "it could obligate an employer to reinstate an incompetent or unqualified employee." *Id.* To address this concern, we invoked the "mixed motive" framework that the Supreme Court set forth in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-86 (1977). (Although Roadway is now trying to rely on *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995), to justify its decision to fire Cefalu, that case is a poor fit for the facts. As the Secretary's brief points out, Roadway knew of and asserted dishonesty as grounds for terminating Cefalu in the first instance, while *McKennon* addresses the use of evidence acquired after the wrongful discharge.) Under the *Mt. Healthy* approach, once the plaintiff demonstrates that her protected conduct played a substantial role in the defendant's

decision to fire her, the burden shifts to the defendant to prove that it would still have terminated the plaintiff in the absence of her protected conduct. *Id.* at 287.

Applying this general principle to Cefalu's case, we concluded that Roadway should have been given an opportunity to argue that it would have terminated Cefalu because of his record of trucking accidents. We explained that a remand was necessary because:

> Roadway was entitled to show that Cefalu indeed dissembled in his employment application to the company. Cefalu wrote that he "resigned" from his previous position. In fact, [he was fired for reckless driving]. Cefalu, in turn, should have the opportunity to show that Roadway does not terminate everyone with such a record, perhaps if the person has had a clean record for a certain number of years in the interim, or other extenuating circumstances exist.

*Id.* at 486.

We went on to note that remanding the case for further proceedings on remedy did not implicate the same concerns that motivated the imposition of the evidentiary sanction at the merits phase:

> Roadway's withholding of the identity of its informant in no way prevented Cefalu from contesting Roadway's claim that reinstatement was an inappropriate remedy because of public safety. Nothing about how, why, or when Roadway learned about Cefalu's misstatement is pertinent to Cefalu's effort to keep his job

despite his conceded earlier problems. If the facts are as Roadway contends, then public-safety concerns, or even regulatory rules, may make it impossible for Roadway to reinstate Cefalu. Roadway therefore should have been permitted to refer to Cefalu's earlier driving record during the remedial stage.

*Id.*

On remand, Roadway took our opinion as an invitation to submit evidence that it would have fired Cefalu for lying about his previous driving record. Roadway offered evidence that it had fired a number of employees who had made false statements. The ALJ, however, declined to explore the issue of dishonesty, as he understood the remand to be limited solely to addressing public-safety concerns raised by Cefalu's driving record, and the ARB endorsed this decision.

With respect to the risk Cefalu's driving posed to the public, Roadway submitted the following evidence about Cefalu's five earlier trucking accidents.

- 1992 - Employer: United Parcel Service. Cefalu swerved his truck out of the way of a car, lost control, and crashed into a drainage pipe ditch. It is not clear how much damage the truck suffered, but Cefalu was fired for reckless driving.

- 1998 - Employer: ANR Advance Transportation. Cefalu fell asleep while driving and his truck struck a guardrail. The truck suffered "major damage" and Cefalu was fired for reckless driving.

• August 27, 2005 - Employer: Roadway. When Cefalu was parking, he ran his truck into the edge of a parked truck. The trucks suffered approximately $600 in damage. Roadway issued a warning letter to Cefalu.

• May 29, 2006 - Employer: Roadway. While backing up his truck in an effort to couple his truck-tractor to a trailer, Cefalu damaged the left-wing of the truck-tractor. Roadway issued a warning letter to Cefalu.

• October 21, 2006 - Employer: Roadway. No details of this accident are contained in the record.

Besides Cefalu's driving record, Roadway also offered employment records showing that it had fired four other drivers involved in similar or less severe accidents. Cefalu countered by presenting evidence that approximately 12 other drivers had not lost their jobs after getting themselves into analogous or worse accidents. In weighing the evidence presented by both sides, the ALJ ultimately sided with Cefalu and found that Roadway failed to show that it would have fired him even in the absence of his protected activity. The ARB agreed with the ALJ's assessment and noted that Cefalu's employment as a truck driver would not seriously endanger the public.

## II

Our review of the ARB's decision is guided by the standard set forth in the Administrative Procedure Act, 5 U.S.C. § 706. See 49 U.S.C. § 31105(d). We may overturn

the ARB's legal conclusions only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The ARB's findings of fact must be upheld if supported by substantial evidence. 5 U.S.C. § 706(2)(E); *Roadway I*, 495 F.3d at 483. To satisfy the substantial evidence standard, the ARB must rely on "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Roadway I*, 495 F.3d at 483. Under this deferential standard of review, we may not "set aside an inference merely because [we] find[] the opposite conclusion more reasonable*." Addis v. Dep't of Labor*, 575 F.3d 688, 690 (7th Cir. 2009) (citation omitted).

## A

Our first task is to clear up the lingering uncertainty about the scope of our remand order. Cefalu and the Department of Labor assert that the repeated references to public-safety in *Roadway I* "clearly" indicate that the remand was limited to this topic. Roadway counters that the underlying logic of the *Mt. Healthy* approach entitles it to present *any* reason it would have fired Cefalu. With regard to Cefalu's dishonesty, Roadway points out that we specifically mentioned that "Roadway was entitled to show that Cefalu indeed dissembled in his employment application to the company." *Roadway I*, 495 F.3d at 486.

We find little support for Roadway's reading of our first opinion in this case. Cefalu's false employment application was mentioned only to signal that, for pur-

poses of the remedy, Roadway was entitled to introduce evidence that Cefalu had in fact been in two serious accidents before joining Roadway. His history would thus be one piece of evidence tending to show that he was an unsafe driver. This reading is consistent with our explanation a few sentences later that Cefalu might be able to refute Roadway's case by presenting evidence that Roadway did not fire employees with comparable driving records. If dishonesty were also at issue, our explanation of Cefalu's defense tactics would have been jarringly incomplete. While Roadway believes that our reliance on the *Mt. Healthy* framework opened the door to its dishonesty arguments, our emphasis on public safety belies the idea that we intended to open the door for Roadway to offer other reasons for firing Cefalu.

We drew this distinction between public safety and other lawful motives for terminating Cefalu's employment in order to respect the Act's remedial structure. Anything that we do must give effect to the automatic reinstatement remedy set forth in the statute. We thus carved out only an exception for cases where reinstatement is impossible or impractical because of public-safety concerns. See *Roadway I*, 495 F.3d at 485 (explaining that the Act's mandatory reinstatement provision must be tempered by the practicality of returning the employee to her prior position). Failure to recognize such an exception would be absurd, as it could result in the reinstatement of unsafe drivers in contravention of applicable regulatory rules. To avoid similarly illogical results, analogous limitations on reinstatement are recognized

in the Title VII context. See, *e.g.*, *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 952 (7th Cir. 1998) (noting that reinstatement is not available under Title VII if it is not possible for employee to return to work). As impracticality is the guiding principle for limitations on reinstatement, there is little reason to allow Roadway to argue about Cefalu's dishonesty. While Roadway may not like to employ truck drivers who have been dishonest, it is difficult to say that requiring Roadway to retain these drivers is not feasible.

Despite Roadway's assertions to the contrary, our decision to employ the *Mt. Healthy* framework is consistent with a particular focus on public-safety concerns. Instead of limiting the proceedings on remand to an examination of the applicable driving safety laws, we instructed the agency to determine whether Roadway would have fired Cefalu because of his driving record. Though this approach takes Roadway's perspective into consideration, it did not contemplate opening the door to an examination of other possible motives behind Roadway's decision to dismiss Cefalu. Rather, we are interested only in what Roadway would have done with a person with Cefalu's driving record who had not engaged in protected activity. That inquiry serves as a useful proxy for determining whether Cefalu's reinstatement would present a public-safety hazard. Given that Roadway has experience in this field and presumably bears the costs for unsafe drivers, it should be a reasonable judge of an employee's suitability for driving.

B

Under the *Mt. Healthy* framework, Roadway must prove that it would have fired Cefalu because of his accident history regardless of whether he engaged in protected conduct. See *Roadway I*, 495 F.3d at 486. Roadway need not, however, show that Cefalu's employment would violate any regulatory rules. If Roadway employs more stringent safety standards than those required by law, then it is entitled to hold Cefalu to them. Nonetheless, in order to satisfy its burden, Roadway cannot simply cite "standards established in its employee manual." *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1048 (7th Cir. 1999). It must instead demonstrate that it had an "actual employment practice[]" of firing drivers with records analogous to Cefalu's. *Id.*; *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989) ("Proving that the same decision would have been justified is not the same as proving that the same decision would have been made."). On remand, the parties both submitted evidence about the way that Roadway treated other drivers with accident records. Given the conflicting evidence on Roadway's termination practices, the ARB found that Roadway had failed to carry its burden.

Although we acknowledge that reasonable people might differ about the outcome here, we have no trouble finding that substantial evidence supported the ARB's decision. *Cf. Spiegla v. Hull*, 371 F.3d 928, 943 (7th Cir. 2004) (concluding that defendant failed to carry its burden of proof under *Mt. Healthy*). Cefalu's three most recent accidents were all relatively minor incidents resulting

in little property damage. His only two serious accidents occurred between 12 and 17 years ago. Cefalu presented evidence that Roadway had retained drivers who had been involved in much more egregious accidents. For instance, Roadway did not fire Eric Jorgensen after he drove his truck into a power line—a mishap that caused the truck to roll over and spill hazardous materials. Nor did Roadway terminate Kevin Embry's employment after he propelled his truck into a low bridge that was clearly marked. Roadway has also continued to employ drivers who had been responsible for multiple accidents. The most extreme example is Donna Sexton, who was still employed after getting herself into at least 10 chargeable accidents while working for Roadway.

Roadway's evidence that it fired four drivers because they were involved in accidents does little to undercut the view that the ARB took of Cefalu's case. At most, it shows that there was evidence on the other side that might have swayed the decision. Three of the drivers that Roadway sacked were involved in what Roadway described as "serious" accidents caused by their recklessness. The other driver was involved in three preventable accidents in a single month. In contrast, Cefalu's recent accidents took place over a year-long period and Roadway described the accidents as "preventable" but not serious.

Shifting its line of attack, Roadway urges that we should accord little weight to Cefalu's evidence that the company in the past has retained other drivers with serious accident records. Their retention, Roadway says, came as the result of a settlement with the union; those

settlements provided that Roadway could suspend the offending drivers rather than fire them. Roadway implies that it would have taken the more drastic step but for the union's intervention. There is some evidence that Roadway had a practice of issuing discharge notices that would then be reduced to suspensions after negotiations with the union or by order of a grievance panel. Roadway therefore claims that its agreement with the union to settle these termination disputes provides little indication of whether it would have fired Cefalu, since the union did not side with Cefalu when he contested his discharge.

Yet Roadway fails to recognize that the union may have declined to take up Cefalu's grievance because it believed that he had been dishonest, which was Roadway's proffered reason for firing Cefalu. There is nothing to indicate that the union had a problem with Cefalu's driving record. As the Department of Labor points out, it is unlikely that the union would take such a position given that it had defended drivers involved in much worse accidents. Furthermore, Roadway has done little to support a finding that it would have fired every driver involved in a serious accident if the union had not stepped in. Simply because its practice is to issue discharge orders and then negotiate with the union does not mean that it would never settle a termination proceeding with an employee who lacked union support.

Lastly, assuming that Cefalu's driving record would not have constituted grounds for termination, Roadway con-

tends that it would violate the public policy underlying the Surface Transportation Assistance Act to reinstate Cefalu, an allegedly dangerous driver. But, as the ARB noted and Roadway does not deny, Roadway routinely retains drivers even though they have some safety problems in their record. The ARB was entitled to conclude that Roadway failed to demonstrate that Cefalu's reinstatement puts the public in harm's way. It demonstrated neither that Cefalu's continued employment would violate any regulatory rules nor that it would violate any internal practices Roadway actually uses. As our discussion shows, there is more than enough evidentiary support for the ARB's conclusion that Cefalu's driving history does not indicate that he is unfit to drive a truck.

We therefore conclude that the ARB was entitled to find that reinstatement was an appropriate remedy in this case. In reaching this conclusion, we emphasize that Cefalu has no right to any preferential treatment as a result of his protected activity. Roadway was (and will be) free to terminate Cefalu's employment for any reason unrelated to his protected activity. Thus, if Cefalu proves to be a danger on the road in the future or otherwise engages in impermissible conduct, Roadway is in no way inhibited from firing him.

* * *

We DENY Roadway's petition for review.