| NONPRECEDENTIAL DISPOSITION |
| --- |
| To be cited only in accordance with |
| Fed. R. App. P. 32.1 |

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 22, 2010[*]
Decided December 27, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 10-1587

| | |
| --- | --- |
| BEVERLY E. ROBINSON, | Petition for Review of an Order of the |
| *Petitioner,* | Administrative Review Board. |
| *v.* | No. 07-070 |
| UNITED STATES DEPARTMENT OF LABOR, | |
| *Respondent,* | |
| and | |
| MORGAN STANLEY, et al., | |
| *Intervening-Respondents.* | |

**O R D E R**

Discover Financial Services, a wholly owned subsidiary of Morgan Stanley, fired Beverly Robinson six months after she submitted a memo to its President and Chief

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Financial Officer reporting improper business practices.  Robinson claims that Discover violated the Sarbanes-Oxley Act by discharging her in retaliation for her protected activity of reporting corporate fraud.  *See* 18 U.S.C. § 1514A.  After a ten-day hearing, an Administrative Law Judge determined that Discover fired her for poor performance.  The Administrative Review Board affirmed the ALJ's decision and dismissed her complaint.  Because substantial evidence supports the Board's determination that Discover did not terminate her as a result of any protected activity, we deny the petition for review.

Robinson began working as a senior auditor for Discover in 2000.  During her first year of work, her supervisors complained on four separate occasions that she was abrasive, unable to accept feedback, and needed to improve her communication skills.  And in the overall evaluation of Robinson's first year of work, one supervisor reported that although she was an experienced auditor, she had difficulty meeting deadlines and interacting with clients and coworkers.

A year after Robinson joined Discover, she found what she thought to be an improper accounting practice: Discover was not "charging off" its customer bankruptcies within the required 60 days of receiving notice of the bankruptcy.  Robinson believed that this practice improperly inflated Discover's assets.  She discussed her concerns with an attorney at Discover and her supervisors, and recorded those concerns in her audit report.

One year later, in response to Robinson's poor first-year evaluation citing missed deadlines, combativeness, and inability to accept criticism, her supervisor began the first step in Discover's progressive disciplinary process.  He placed Robinson on a performance-action plan to address "her adversarial stance toward colleagues and clients" and her inability to accept feedback.  Robinson's attitude and productivity improved briefly, but in early 2003 several supervisors met with her to discuss continued reports of her poor interaction with coworkers and clients.  Later that year, one supervisor reported to Anthony DeLuca, the global head of the internal audit department for Morgan Stanley, that Robinson was one of his worst employees.  When Robinson's performance still did not improve, Discover placed her on another action plan and denied her a raise.  Her supervisor then initiated a "360 Review" of her work, a process that involved gathering written evaluations about Robinson from some of her past and present coworkers and supervisors.

On February 5, 2004, before her 360 Review was completed, Robinson submitted a memo to Discover's President and its Chief Financial Officer, reporting what she perceived as thirteen "financial, operational, regulatory, and legal risks" that Discover faced.  These risks included personal use of company cell phones by employees, wasteful technology expenditures, delayed audit reporting, and lack of computer security.  She also repeated her

contention from three years earlier that Discover was impermissibly delaying charging off bankruptcies.

Discover immediately launched an investigation into her accusations and hired an outside audit firm to investigate her claims. Three months after Robinson submitted her memo, the results of the investigation revealed that some of Robinson's claims had merit, but that she contributed to some of the problems she identified, such as delayed audits. The audit firm found no evidence of intentional misconduct or fraud and determined that Discover's charging off practices complied with the law. It shared these results with Robinson.

Meanwhile, one month after Robinson wrote her memo, a human-resources representative prepared a report of the feedback from Robinson's 360 Review and presented it to Robinson. The feedback largely echoed the previous, longstanding complaints that she was difficult to work with, unwilling to accept criticism, and did not meet her deadlines. In June 2004, Robinson's new supervisor, Vesela Zlateva, observed that Robinson largely ignored the feedback from the 360 Review. She then placed Robinson on yet another action plan—this time warning her that failure to improve could result in termination. In another attempt to strengthen Robinson's professional development, Discover hired an executive coach to work with her on the weaknesses identified in her action plans.

But in late July 2004, Zlateva complained that Robinson was still missing deadlines. She then implemented the next step in Discover's discipline process and gave Robinson a "Job in Jeopardy" letter, which alerted Robinson that she had 15 days to demonstrate an improvement in her performance, or she would face termination. But Robinson continued to miss deadlines, and Zlateva prepared a termination letter two weeks later. DeLuca, who was kept apprised of the problems with Robinson, gave final approval for this decision, and Discover fired Robinson by the end of August.

To prevail under Sarbanes-Oxley, Robinson must prove by a preponderance of the evidence that (1) she engaged in protected activity; (2) Discover knew about this activity; (3) she suffered an unfavorable employment action; and (4) the protected activity was a contributing factor in the unfavorable action. *Harp v. Charter Commc'ns, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009). To establish that she engaged in protected activity, Robinson must show that she had an objectively reasonable belief that the conduct that she complained of constituted fraud as described in 18 U.S.C. § 1514A(a)(1). *Welch v. Chao*, 536 F.3d 269, 275 (4th Cir. 2008).

The ALJ determined that Robinson had engaged in protected activity—limited to the portion of her 2004 memo that discussed Discover's policy of charging off bankruptcies.

But the ALJ found that Robinson could not prove that her protected activity contributed to her discharge. Even though DeLuca knew about Robinson's protected activity, the ALJ credited his testimony that Robinson's poor performance evaluations and personnel record, not her 2004 memo, motivated his decision to approve her discharge. The ALJ also credited Zlateva's testimony that she did not even know any details about Robinson's protected activity when she decided to request her discharge, so that activity could not have influenced her actions. The ALJ acknowledged that the timing of Robinson's termination—six months after her 2004 memo—provided circumstantial evidence of retaliation. But the ALJ determined that Robinson's poor performance, which began shortly after she started working for Discover and was never remedied, led to her discharge. Because these performance problems preceded her protected activity, the ALJ concluded that the protected activity was not a contributing factor to her discharge.

On administrative review, the Board agreed that Robinson's 2004 memo included protected activity, but added that her original report in 2001 about the charging off practices also was protected. Still, the Board agreed that Robinson could not prove by a preponderance of the evidence that her protected activity contributed to her termination.

We will uphold the Board's decision unless it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Its findings of fact must be supported by substantial evidence. *Id.* § 706(2)(E); *Roadway Express, Inc. v. U.S. Dep't of Labor*, 612 F.3d 660, 664 (7th Cir. 2010). For purposes of this appeal, we assume that Robinson engaged in protected activity beginning in 2001 and focus on whether substantial evidence supports the Board's view that the activity did not contribute to her discharge.

Robinson argues that the Board incorrectly concluded that Zlateva, not DeLuca, decided to fire her. The testimony from Zlateva and DeLuca, however, provided the ALJ with a substantial basis for finding that even though DeLuca approved Zlateva's decision, it was Zlateva who was the actual decision-maker. In any case, the ALJ also permissibly credited their testimony that Robinson's accusations about Discover's practices did not influence their disciplinary decisions. Robinson disputes these credibility determinations, along with several other of the ALJ's credibility determinations. But nothing in the record suggests that these rulings are arbitrary, and we will defer to the ALJ's findings because they are supported by substantial evidence. *Roadway Express*, 612 F.3d at 664.

Robinson also raises numerous evidentiary challenges. She maintains that the ALJ should have compelled the Department of Labor to produce its response to her OSHA complaint and that the ALJ should have allowed her to present certain testimony from her witnesses. She also contends that the ALJ should not have considered the 360 Review because, she argues, it is hearsay. But as with her credibility challenges, Robinson has not

shown these rulings to be arbitrary or capricious, and so we again defer to the ALJ's findings.  *Roadway Express*, 612 F.3d at 664.

Next Robinson contends that she missed several deadlines after February 2004 because she was busy compiling paperwork for the investigation of her fraud allegations. These missed deadlines, she continues, were related to her protected activity, and Discover should not have factored them into the decision to fire her.  But Discover relied on the pattern of missed deadlines *throughout* her four years at Discover, not just during the four-month fraud investigation.  The pattern remained unacceptable, even apart from the investigation.  In fact, between June—after the investigation ended—and her discharge three months later, Robinson missed 22 deadlines.  And Discover said that it fired her because of other serious deficiencies as well, which Robinson failed to resolve despite offers of assistance from her supervisors.  Specifically, from the time that she arrived at Discover in 2001, Robinson's performance evaluations consistently criticized her belligerent demeanor and her refusal to accept feedback.  Her supervisors offered to help her rectify these failings, providing her with three action plans, a 360 Review, an executive coach, and a Job-in-Jeopardy letter.  But after Discover allowed her four years to correct her chronic shortcomings, she never showed the necessary improvement.  Because a mountain of evidence demonstrates Robinson's history of unabated poor performance, the Board's ruling that Robinson's fraud memo did not contribute to her discharge was not arbitrary or capricious.

Finally, Robinson questions the wisdom of the entire statutory scheme for review of whistleblower complaints.  She laments the strikingly low success rate of these claims and attributes it, in part, to what she considers the bias of OSHA, ALJs, and the Board.  But our review is limited to ensuring that the administrative record adequately supports the agency's decision.  *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978); *Fleszar v. U.S. Dep't of Labor*, 598 F.3d 912, 914-15 (7th Cir. 2010).  Evaluating the effectiveness of the procedures themselves is beyond our purview.

The petition for review is DENIED.