In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 21-1532

MICHAEL J. BROUSIL,

*Petitioner*,

*v.*

UNITED STATES DEPARTMENT OF LABOR,
ADMINISTRATIVE REVIEW BOARD,

*Respondent*,

*and*

BNSF RAILWAY COMPANY,

*Intervening Respondent*.

_____

On Petition for Review of a Decision and Order of the
United States Department of Labor.
Nos. 2020-0053 & -0062

_____

ARGUED DECEMBER 6, 2021 — DECIDED AUGUST 9, 2022

_____

Before RIPPLE, WOOD, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Michael Brousil, a locomotive engineer, filed an administrative complaint with OSHA alleging that his employer, BNSF Railway Company, violated the Federal Railroad Safety Act by retaliating against him for raising

safety concerns and for refusing to engage in unsafe practices. Brousil had been disciplined for safety rule violations and insubordination for three 2013 incidents where Brousil refused to perform parts of his job. At the end of a winding path, the Department of Labor's Administrative Review Board affirmed an administrative law judge's determination that BNSF had a valid same-action affirmative defense. Because substantial evidence supported the ARB's decision that, absent any protected activity, BNSF would have disciplined Brousil the same way because of his unwillingness to entertain reasonable, safe alternatives, we deny Brousil's petition for review.

I

A

After twenty-five years as a locomotive engineer for BNSF, Michael Brousil found himself facing a series of investigations and disciplinary actions concerning three incidents in 2013. The first incident—in February—involved Brousil's piloting a passenger train out of station while one of the train's doors remained open. Brousil had failed to confirm that an indicator light was on, which illuminates green only when all the doors on a train are closed and is visible only to the locomotive engineer. BNSF soon informed Brousil it was investigating this incident.

While that investigation was ongoing, a second incident occurred. On July 29, Brousil reported an indicator light outage to his supervisor. When an indicator light fails, BNSF policies require a train's crew to manually verify that all doors are closed. The parlance dubs this "going the old way," codified in BNSF's Passenger Operations Manual as Rule 1.2.4.

Manual verification had been BNSF's standard operating procedure before indicator lights were installed in the early 2010s. Once the crew convenes and confirms all doors are closed, the train may go on its way. Accordingly, Brousil's supervisor—following BNSF's policies—directed Brousil to go the old way to deal with the malfunctioning light. Even after the crew confirmed all doors were closed and the train was safe to be operated, Brousil refused to operate the train. He maintained that doing so with a malfunctioning indicator light would be unsafe. At no point did Brousil seek an agreement with his supervisor as to how the work could be completed in a safe manner. Nor did Brousil suggest any alternatives, even though the "old way" had been standard procedure for years before 2010.

The third incident was inside Chicago's Union Station the following month, on August 1. Pulling his train up to a platform, Brousil stopped the moment he lost sight of the absolute signal, a large red stoplight flagging the end of the tracks. Engineers like Brousil face automatic decertification of their licenses if they move a train beyond the tracks' end. Not wanting to risk it, Brousil stopped short and out of reach of the station's electric power source. This left as the only power source the train's diesel head end power, which Brousil personally considered unsafe in close confines because of its diesel fumes. Meanwhile, a disabled passenger was waiting to board Brousil's train using the train's ADA-compliant lift. Now Brousil had a problem. He refused to get any closer to the station's power source for fear of decertification and refused to use the train's power source for fear of the diesel fumes. Because the lift lacked power, the disabled passenger could not board the train, delaying it fifteen minutes. Just like he did during the July 29 incident, Brousil refused to discuss

a fix with his supervisor. He refused to use head end power when ordered to do so. And he did not try to operate the ADA lift manually, which BNSF employees are trained to do. Instead, Brousil walked off, prompting a coworker to finish the job by using the head end power to operate the ADA lift for the passenger.

BNSF temporarily suspended Brousil and held two formal disciplinary hearings, one on August 14 and one on September 11. At the end of the first hearing, the presiding BNSF employee considered evidence, witness testimony, and arguments, concluding that Brousil had violated the company's safety rules in February when he piloted a passenger train with the door open.

The second hearing—charging Brousil with insubordination and rule violations during the second and third incidents on July 29 and August 1—had the same procedures and the same result. The conducting officer found Brousil had committed the charged violations and issued him two suspensions that under BNSF's policies warranted dismissal.

## B

Brousil filed a complaint with OSHA alleging that BNSF's disciplinary actions against him were retaliation for his raising safety concerns and refusing to engage in unsafe practices, conduct protected by the Federal Railroad Safety Act, 49 U.S.C. § 20109. OSHA dismissed the complaint.

Brousil then sought and got a formal evidentiary hearing before a Department of Labor administrative law judge. That ALJ denied Brousil's claim based on the statutory same-action affirmative defense, 49 U.S.C. § 42121(b)(2)(B)(iv), but the Administrative Review Board remanded so that the ALJ could

reconsider that defense using several factors to address Brousil's situation, where the conduct for which Brousil was disciplined overlapped with protected conduct. The ALJ concluded that Brousil had carried his prima facie case under FRSA, but BNSF would have imposed the same discipline absent Brousil's protected activity. The ARB affirmed the ALJ's conclusions and denied Brousil's complaint, agreeing that "the record supports the ALJ's factual determination that [BNSF] proved, by clear and convincing evidence, that it would have taken the same adverse actions against [Brousil] absent any of his protected activity."

Brousil petitioned us to review the ARB's decision in accordance with 49 U.S.C. § 20109(d)(4), arguing that the ALJ and ARB committed various errors in applying the same-action defense. BNSF intervened.

## II

We review the ARB's decision under the Administrative Procedure Act standards in 5 U.S.C. § 706. 49 U.S.C. § 20109(d)(4). We will uphold the ARB's legal conclusions unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Roadway Exp., Inc. v. U.S. Dep't of Lab.*, 612 F.3d 660, 664 (7th Cir. 2010) (quoting 5 U.S.C. § 706(2)(A)). And we will uphold the ARB's findings of fact if supported by substantial evidence. *Id.* (citing 5 U.S.C. § 706(2)(E)). The deferential substantial evidence standard is satisfied if the factfinder relied on "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Id.* (citation omitted). We accept without deciding—as did the ARB—that Brousil's reporting safety issues and refusing to work constituted protected activity and that

Brousil carried his prima facie case. So we turn to the statutory same-action affirmative defense.

An employer is not liable on a FRSA retaliation claim if it demonstrates "by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of [statutorily protected] behavior." 49 U.S.C. § 42121(b)(2)(B)(iv); see *id.* § 20109(d)(2)(A) (incorporating *id.* § 42121(b) by reference). The ARB has given guiding factors to factfinders deciding whether an employer would have taken the same adverse action against an employee absent any protected activity: "(1) how 'clear' and 'convincing' the independent significance is of the non-protected activity; (2) the evidence that proves or disproves whether the employer 'would have' taken the same adverse actions; and (3) the facts that would change in the 'absence of' the protected activity." *Speegle v. Stone & Webster Constr., Inc.*, ARB No. 13-074, ord. at 12 (ARB Apr. 25, 2014). These factors are non-mandatory, and the ARB has admonished factfinders to "holistically consider any and all relevant, admissible evidence." *Clem v. Computer Sci. Corp.*, ARB No. 16-096, ord. at 12 n.8 (ARB Sept. 17, 2019). Contrary to Brousil's contention, no circuit court or later ARB decision has limited the factfinder's ability to look at all relevant evidence.

It is difficult to draw the line where protected conduct ends and unprotected conduct begins when—as here—both arise out of the same incidents. That line-drawing is factual and due substantial evidence review. See *Formella v. U.S. Dep't of Lab.*, 628 F.3d 381, 393 (7th Cir. 2010) (upholding ALJ's same-action defense determination as supported by substantial evidence). In *Formella*, we held that an employer was entitled to a same-action defense. The conduct for which

Formella was fired overlapped with protected conduct. *Id.* Formella, a truck driver, had reported to his supervisors that his assigned truck had various unsafe defects, but his manner of expressing these protected concerns was markedly hostile—even threatening—and he was terminated. *Id.* at 383–87. We held that such blatant insubordination is typically unprotected behavior. *Id.* The ALJ (and the ARB in affirming) had substantial evidence about Formella's disruptive conduct to conclude that the plaintiff had crossed the line from protected to unprotected conduct. *Id.* at 393.

The same is true for Brousil's case. Substantial evidence showed Brousil refused to use reasonable alternatives in both the July 29 and August 1 incidents. Where there is a safe, reasonable alternative, refusal to use that workaround will typically take the conduct over the line from protected (refusal to engage in unsafe work) to unprotected (refusal to use the alternative).

Substantial evidence supported a finding that Brousil's conduct during the July 29 incident crossed over into unprotected territory because of his unwillingness to seek a reasonable, safe alternative. For years before 2010 and the emergence of indicator lights, BNSF engineers had used the old way of manual verification, Passenger Operations Manual Rule 1.2.4, to ensure train doors were safely closed. Brousil knew all about POM 1.2.4, which makes sense considering his more than two decades as a BNSF engineer before 2010. And no evidence was presented that the old way was unsafe. On the contrary, every other operator was comfortable using the old way as an alternative. The factfinders had enough evidence to conclude Brousil's intransigence constituted unprotected activity for which BNSF would rightly discipline employees.

BNSF disciplined Brousil for his unwillingness to entertain a solution—the old way—not for his reporting or refusal to work.

The same goes for the August 1 incident. Brousil refused to discuss any solutions to his dilemma and simply walked off. But evidence showed using head end power was a reasonable, safe alternative. The ALJ reviewed testimony and documents explaining that diesel exhaust in Chicago Union Station has never approached harmful levels. BNSF published these findings on its website, which Brousil had seen. And Brousil did not entertain the option to operate the lift manually. Here again BNSF disciplined Brousil for his unwillingness to entertain a solution—using head end power or the manual option—not for his reporting or refusal to work.

Considering substantial evidence showed these alternatives were available during both incidents, BNSF had a valid reason for disciplining Brousil for refusing to use them. Therefore, regardless of any protected activity overlapping with those refusals, BNSF "would have taken the same unfavorable personnel action." See 49 U.S.C. § 42121(b)(2)(B)(iv).

Brousil thinks the ALJ erred by not addressing multiple facts evincing BNSF was disciplining him for his protected activity, not his misconduct: (1) An email from BNSF management that Brousil claims shows animosity towards Brousil's exercise of FRSA rights; (2) alleged disparate treatment of other employees in the hearing on the July 29 incident; and (3) BNSF's altering of a printout showing that Brousil had left the station during the February incident when the indicator light was not on. We've never held that agencies must consider every piece of evidence when making a factual finding under the Administrative Procedure Act. And evidence arguably

pointing towards one conclusion does not change the substantial evidence pointing in the direction taken by the agency factfinders. At most, these few facts mean "that reasonable people might differ about the outcome here," but—for the reasons stated above—"we have no trouble finding that substantial evidence supported the ARB's decision" that the same-action defense applied to BNSF's discipline of Brousil. *Roadway Exp.*, 612 F.3d at 666.

DENIED